554 S.E.2d 870

**SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant/Respondent,**

v.

**S.E.C.U.R.E. UNDERWRITERS RISK RETENTION GROUP, Respondent/Appellant**

**and Ralph Garrison, Mary Garrison, Garrison Pest Control, Inc., Jack C. Purvis, Susan Purvis, and Jordan Purvis, a minor under the age of fourteen (14) years, Respondents.**

**No. 3263.**

Court of Appeals of South Carolina.

Heard Sept. 11, 2000.

Decided Nov. 27, 2000.

Refiled Sept. 17, 2001.

Rehearing Denied Nov. 15, 2001.

Louis D. Nettles, of Nettles, McBride & Hoffmeyer, of Florence, for appellant/respondent.

Carlton B. Bagby, of Columbia, for respondent/appellant.

CURETON, J.:

In this declaratory judgment action, South Carolina Farm Bureau (Farm Bureau) and S.E.C.U.R.E. Underwriters Risk Retention Group (SECURE) sought to determine insurance coverage for injuries sustained by Jordan Purvis, a minor, resulting from a dog bite she sustained while on the premises of Garrison Pest Control, Incorporated. Jordan and her parents brought an action for damages against Ralph Garrison, Mary Garrison, and Garrison Pest Control, Inc. Farm Bureau and SECURE sought a declaration of the extent of their coverages. The circuit court determined both carriers had a duty to defend and indemnify the parties in the underlying personal injury action. The court also held Farm Bureau's coverage was primary and SECURE's coverage was excess. Farm Bureau appealed and SECURE cross-appealed the order. We affirm.

## *FACTS / PROCEDURAL HISTORY*

Farm Bureau issued Ralph and Mary Garrison a homeowner's insurance policy for their home in Florence, South Carolina. The Farm Bureau policy provided personal liability coverage subject to certain provisions and exclusions. SECURE provided insurance coverage to Garrison Pest Control through a commercial general liability policy. Garrison Pest Control is owned by the Garrisons and Scott Newell.

On December 12, 1994, Jordan Purvis, a four-year-old girl, was bitten by the Garrisons' dog while lawfully on the business premises of Garrison Pest Control. The parties stipulated the dog was owned and kept by the Garrisons as their family pet, was not kept for security purposes, as a mascot, or in connection with the pest control business, and that Mary Garrison frequently brought the dog to Garrison Pest Control from the Garrison home when she did not have an alternative

place to leave the dog when she came to the office.[1]  The dog did not serve any function associated with the business of general pest control or extermination.

Jack and Susan Purvis are Jordan's parents.  Jack, Susan, and Jordan made claims against Ralph Garrison, Mary Garrison, and Garrison Pest Control for injuries Jordan sustained as a result of the dog bite.  Insurance coverage was sought from both Farm Bureau and SECURE.  Both carriers provided legal defenses under reservations of rights.

Farm Bureau filed this declaratory judgment action seeking a determination as to whether it had a duty to defend and indemnify its insureds, Ralph and Mary Garrison.  SECURE counterclaimed and cross-claimed for similar relief.  All parties stipulated to the relevant facts and the admissibility of certain documents, which are part of the record.

After a hearing, the circuit court found both Farm Bureau and SECURE had duties to defend and, if necessary, to indemnify the parties in the underlying personal injury action. The court further held Farm Bureau's coverage was primary and SECURE's coverage was excess.  These appeals follow.

### *LAW / ANALYSIS*

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue."  *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).  A suit to determine coverage under an insurance policy is an action at law.  Therefore, this Court's jurisdiction "is limited to correcting errors of law and factual findings will not be disturbed unless unsupported by any evidence."  *State Farm Mut. Auto. Ins. Co. v. James,* 337 S.C. 86, 93, 522 S.E.2d 345, 348–49 (Ct.App.1999); *see also Townes Assocs. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

### *I.  Duty to Defend and Indemnify*

Both Farm Bureau and SECURE appeal the order of the circuit court finding they have a duty to defend and, if necessary, to indemnify the parties in the underlying personal

---

1.  Stipulation 3 of the Stipulation to Facts and Documents.

injury action. Both carriers contend the other is solely responsible for the defense and indemnification of the parties. We disagree.

## A. Farm Bureau's Appeal

Farm Bureau argues the circuit court erred in requiring it to defend and indemnify the Garrisons because (1) the incident occurred on premises which were owned by the Garrisons, but not described in Farm Bureau's policy, and (2) the incident arose from a business pursuit. We disagree.

Under the Garrisons' homeowner's policy, Farm Bureau agreed that:

> If claim is made or suit is brought against an insured for damages because of bodily injury ... we will: 1. Pay up to our limits of liability for the damages which the insured is legally liable; and 2. Provide for a defense at our expense by counsel of our choice, even if the suit is groundless....

Farm Bureau also agreed to "pay the necessary medical expenses that are incurred within three years from the date of an accident causing bodily injury." The policy applied to a person off the insured location if the bodily injury "[was] caused by an animal owned by or in the care of the insured." The policy excluded coverage where there was "bodily injury or property damage ... arising out of business pursuits of an insured ... [or] arising out of a premises ... owned by the insured ... that is not an insured location." Relying on these exclusions, Farm Bureau maintains the homeowner's policy excludes coverage for the dog bite in this case.

"[A]n insurer must show a causal connection between a loss and an exclusion before the exclusion will limit coverage under the policy." *South Carolina Ins. Guar. Ass'n v. Broach*, 291 S.C. 349, 351, 353 S.E.2d 450, 451 (1987). At the beginning of both policy exclusions relied on by Farm Bureau are the words "arising out of." In *McPherson v. Michigan Mutual Insurance Co.*, 310 S.C. 316, 320, 426 S.E.2d 770, 771 (1993), our supreme court held that "for the purpose of construing an exclusionary clause in a general liability policy, 'arising out of' should be narrowly construed as 'caused by.'" Furthermore, "[w]here the words of a policy are capable of two reasonable interpretations, that construc-

tion will be adopted which is most favorable to the insured."
*Id.*

No South Carolina case specifically addresses whether
a homeowner's policy provides coverage for a dog bite that
occurs on a business premise away from the home. However,
a Missouri court addressed this issue in *Lititz Mutual Insur-
ance Co. v. Branch*, 561 S.W.2d 371 (Mo.App.1977). In *Lititz*,
a dog was taken from the residence to the business premises
of a dairy where it was tethered. Subsequently, the dog bit a
child. The homeowner's policy insurer filed a declaratory
judgment action alleging it did not have a duty to defend and
indemnify the insured. The policy exclusions in *Lititz* were
very similar to those in this case. That policy excluded
coverage for bodily injury or property damage arising out of
business pursuits of any insured and injury or damage arising
out of any premises, other than the insured premises, owned,
rented or controlled by any insured. The *Lititz* court rea-
soned the dog bite was the result of personal tortious conduct
and was not causally related to the business premises. The
court stated:

> Liability for injuries caused by an animal owned by an
> insured arises from the insured's personal tortious conduct
> in harboring a vicious animal, not from any condition of the
> premises upon which the animal may be located.

*Id.* at 374.

We find this reasoning persuasive. Utilizing the definition
of "arising out of" from *McPherson*, and the analysis from
*Lititz*, we conclude the fact that the dog bite occurred on the
business premises of Garrison Pest Control does not necessar-
ily mean that it was "caused by" the business pursuits or
business premises. Rather, the dog bite may have been
caused by the alleged tortious conduct of bringing the family
pet to the business premises.

We agree with the circuit court's conclusion that Farm
Bureau's policy exclusions are thus inapplicable to the injury
sustained by Jordan Purvis and affirm the circuit court's
determination that Farm Bureau has a duty to defend and, if
necessary, indemnify the Garrisons in the underlying action.

*B. SECURE's Appeal*

SECURE contends that the circuit court erred in finding it has a duty to defend and, if necessary, indemnify the parties in the underlying action. We disagree.

*1. Incident's Relationship to An "Insured" Under the Policy's Terms*

■ SECURE argues the claims asserted in the underlying action do not relate to the duties of Ralph or Mary Garrison as officers or employees of Garrison Pest Control. SECURE maintains its policy does not provide coverage for this incident because the dog was personally owned by the Garrisons and their potential liability for the failure to supervise the dog was personal to them and did not originate with any risk connected with their employment. SECURE further argues Mary Garrison is not an insured under the policy because she was not an officer, director, or employee acting within the scope of her official duties when this incident occurred.

■ SECURE overlooks, however, the Garrisons' roles as owners of the business, who were actively engaged in operating the business. "One who controls the use of property has a duty of care not to harm others by its use." *Nesbitt v. Lewis*, 335 S.C. 441, 446, 517 S.E.2d 11, 14 (Ct.App.1999) (quoting *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997)). "The responsibility for an injury negligently caused by a defect or dangerous condition or activity in or on real property usually attaches to the owner or possessor, by virtue of his control thereof...." 62 Am.Jur.2d *Premises Liability* § 4, at 351 (1990).

Along with her husband, Mary Garrison owned sixty percent of the stock in Garrison Pest Control. Therefore, the Garrisons effectively controlled what took place on the premises of Garrison Pest Control. Garrison Pest Control, the named insured on the SECURE policy, through its owners and officers, allowed the Garrison family pet on the business premises. Garrison Pest Control had a duty to use reasonable care to protect the public from any dangerous condition or activity that the keeping of the pet created on the premises. Therefore, SECURE had a duty to defend Garrison Pest Control, its named insured, because of its potential liability for the dog bite.

█ This holding is not inconsistent with our reasoning that Farm Bureau's policy does not exclude coverage because the dog bite was not caused by Garrison Pest Control's premises. As previously stated, "arising out of" is narrowly construed in policy exclusions to mean "caused by" the premises. SECURE's policy provides coverage for " 'bodily injury' ... *caused by an occurrence that takes place in the coverage territory* and *during the coverage period* ." (Emphasis added). The policy broadly defines the coverage territory as the United States of America (including its possessions and territories), Puerto Rico, and Canada and also includes international waters and air space. Therefore, the literal language of SECURE's policy covers all injuries sustained on the business premises unless the injury meets certain policy exclusions, none of which are applicable in this case.

█ Furthermore, a person may recover against a property owner for the personal tortious conduct of an employee or guest on the premises if the owner knows or has reason to know such conduct was occurring. *See Bullard v. Ehrhardt,* 283 S.C. 557, 324 S.E.2d 61 (1984); *Burns v. South Carolina Comm'n for the Blind,* 323 S.C. 77, 448 S.E.2d 589 (Ct.App. 1994). In such instances, the injury is not caused by the premises, strictly speaking, but damages are recoverable because the incident occurred on the premises and the property owner failed to adequately warn others or take precautions to avoid the injury. *Id.*

2.  *Premises Liability As A Covered Operation or Hazard Under the Policy*

Additionally, SECURE argues its policy does not insure the duty to keep the business of Garrison Pest Control safe for the visiting public. SECURE bases this argument on the provision of the policy which states as follows:

> The coverage afforded by this policy pertains only to those operations identified on the signed S.E.C.U.R.E. application and in the Description of Hazards or Classifications pages (SEC–140) of this policy.

SECURE maintains the Description of Hazards and Basis of Premium included various potential hazards that relate only to the business of extermination. SECURE further asserts the

presence of Jordan Purvis and the dog were not related to any of the covered hazards.

This issue is not preserved for appellate review. An issue must be raised to and ruled on by the trial court for an appellate court to review the issue. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). Although SE-CURE raised the issue of whether the SECURE policy affords coverage only for those operations which are identified on the list of classifications and in the description of hazards, it was never ruled on by the trial court and SECURE failed to file a motion to alter or amend. *See Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (issue was not preserved for appellate review where the trial court did not explicitly rule on the appellant's argument and the appellant made no Rule 59(e), SCRCP, motion to alter or amend the judgment). Accordingly, the issue is not preserved for appellate review.

## II. Concurrent Coverage

Having determined that both insurers have a duty to defend and indemnify the Garrisons, we must also determine whether the policy coverages should be prorated or whether one policy should be treated as an excess policy. In *South Carolina Insurance Co. v. Fidelity and Guaranty Insurance Underwriters, Inc.,* 327 S.C. 207, 489 S.E.2d 200 (1997), our supreme court stated that prior South Carolina precedents suggest if two or more policies insure the same entity against the same risk to the same object, the policies are concurrent and losses should be prorated between the insurers who issued the policies. The present case presents issues akin to this situation. Both policies: (1) provide coverage for bodily injury, (2) provide protection to the Garrisons' business interests (either directly or incidentally), (3) were in effect during the period of the occurrence, and (4) protect against liability for injury sustained without limitation to particular premises. However, the fact that coverage is concurrent does not necessitate automatic proration of coverage. We must also determine whether the coverage contained in the policies is intended to be primary or excess by analysis of the policy language to glean the total insuring intent of the policies. *Id.*

### III. Primary versus Excess Coverage

Farm Bureau argues the circuit court erred in finding that its policy provided primary coverage and SECURE's policy provides excess coverage. We disagree.

The circuit court relied on the "total policy insuring intent" rule in holding Farm Bureau's policy provided primary coverage in this case while SECURE's policy provided excess coverage. The "total policy insuring intent" rule is set out in *Fidelity*, 327 S.C. 207, 489 S.E.2d 200 (1997). In that case, our supreme court held courts apportioning liabilities among multiple insurers should look to the overall language of policies to ascertain whether primary or secondary coverage is intended. Under the "total policy insuring intent" rule, the relevant question is the overall intent of the parties as embodied in the policy. *Id.*

The circuit court determined the primary intent of SECURE's policy was to cover hazards associated with general pest control and extermination, whereas the Farm Bureau policy specifically provided coverage for household pets. Using this analysis, the circuit court determined the total insuring intent in the Farm Bureau policy more closely reflected the events at issue in this case, and held Farm Bureau's coverage should be primary. The "total policy insuring intent" rule applies where policies which concurrently cover a loss contain competing "other insurance" clauses. *See Fidelity*, 327 S.C. 207, 489 S.E.2d 200. The relevant provisions of the other insurance clauses in the insurance policies in the instant case read as follows:

### FARM BUREAU'S POLICY

**Other Insurance–Coverage E— Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

### SECURE'S POLICY

Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent on or any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire Insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has

paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

We find that the other insurance clauses of the policies in question are mutually repugnant in that SECURE's other insurance clause is a pro rata clause which purports to make SECURE liable for only a portion of losses covered by any other primary insurance. Although the general rule regarding the application of "other insurance clauses" under these circumstances mandates that the coverage be prorated as both policies are treated as primary coverage, "this rule should not apply when its use would distort the meaning of the terms of the policies involved." *Fidelity*, 327 S.C. at 215, 489 S.E.2d at 204 (citation omitted). In South Carolina, the total policy insuring intent of the parties always remains the central issue in determining the proper apportionment of coverage among multiple insurance carriers. *Id.* Therefore, we find that the trial court properly resorted to the "total policy insuring intent" rule in order to determine the proper apportionment of coverage under the policies.

The SECURE policy specifically provides that its coverage is primary "except for other insurance that is fire, extended coverage, builders risk, installation risk of similar coverage for 'your work' or; that is fire insurance for premises rented to you; or if the loss arises out of the maintenance or use of aircraft, autos, or watercraft." As SECURE's policy is specifically written to cover business activity it is axiomatic that this language is intended to apply in the instance of other policies relating to business coverage and in instances where ancillary activity related to the business may be covered by separate insurance policies. Because none of the conditions are present which would trigger application of the excess clause language, this clause is inapplicable and the language concerning sharing the loss with other insurance would apply. The Farm Bureau policy specifically provides coverage for the type of occurrence that was encountered by the Purvises at Garrison Pest Control. However, the Farm Bureau Policy also contains an

excess clause which is in direct competition with the pro rata clause in SECURE's policy. This situation requires South Carolina courts to resort to the "total policy insuring intent rule" which requires analysis of the language of the policy, together with other factors, to determine the intent of the parties.

Resorting to an analysis of all of the language of both policies, we find that the Farm Bureau policy contains a clause protecting the Garrisons from liability for animal injuries which does not limit the occurrence of bodily injury caused by an animal owned by the Garrisons to the premises of the residence. Likewise, SECURE's policy provides coverage for bodily injury which occurs within the broadly defined coverage territory during the coverage period. In the instant case, however, the injury sustained is the type of occurrence that was most likely within the anticipation of the parties when the Farm Bureau policy was written, as injury from animals was specifically mentioned in the policy language. Therefore, the circuit court's determination of primary and excess coverage is affirmed. We hold Farm Bureau must provide the parties in the underlying action with primary coverage and SECURE must provide excess coverage.

## CONCLUSION

We affirm the circuit court's determination that both the SECURE and Farm Bureau policies provide coverage for the dog bite to Jordan Purvis and the determination that Farm Bureau's coverage is primary and SECURE's coverage is excess.

**AFFIRMED.**

GOOLSBY and SHULER, JJ., concur.