642 S.E.2d 619

**Ernest Bartlett ALTMAN, Respondent,**

v.

**Vicky GRIFFITH, Appellant.**

**No. 4205.**

Court of Appeals of South Carolina.

Heard Dec. 5, 2006.

Decided Feb. 5, 2007.

Rehearing Denied March 22, 2007.

390

Donald Bruce Clark, Robert Rosen, both of Charleston and J. Mark Taylor, of West Columbia, for Appellant.

D. Mark Stokes, of North Charleston and John Graham Altman, III, of Hanahan, for Respondent.

KITTREDGE, J.:

This is an appeal from a family court order awarding custody of the parties' minor child to Ernest Bartlett Altman (Father). Vicky Griffith (Mother) appeals.[1] We affirm.

## I.

We are aware of our right to conduct a de novo review in an appeal from the family court and find facts in accordance with our own view of the preponderance of the evidence. *Nasser-Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005) (citing *Emery v. Smith*, 361 S.C. 207,

---

1. Appellate counsel did not represent Mother at trial.

213, 603 S.E.2d 598, 601 (Ct.App.2004)). With respect to custody determinations, however, this court and our supreme court have consistently shown deference to family court judges in electing between fit parents. In the case before us, although both parents were burdened with "shortcomings," there is no challenge to the finding of fitness. For obvious and compelling reasons, as an appellate court, we are reticent to substitute our judgment on the custody determination between fit parents for that of the family court judge.

■ Our deference to the family court's findings is especially warranted here, for the ultimate determination rests primarily on the trial judge's assessment of witness demeanor and credibility. In gauging between fit parents as to who would better serve the best interests and welfare of the child in a custodial setting, the family court judge is in a superior position to appellate judges who are left only to review the cold record. For this reason, custody determinations largely rest in the sound discretion of the family court judge. *Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996) ("[T]he appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the [family] court."); *Brown v. Brown*, 362 S.C. 85, 89, 606 S.E.2d 785, 787 (Ct.App.2004) (same); *Shirley v. Shirley*, 342 S.C. 324, 330–31, 536 S.E.2d 427, 431 (Ct.App.2000) ("Custody decisions are matters left largely to the discretion of the [family] court."); *Paparella v. Paparella*, 340 S.C. 186, 189, 531 S.E.2d 297, 299 (Ct.App.2000) (noting appellate courts should be reluctant to supplant the trial court's evaluation of witness credibility regarding child custody). Indeed, our supreme court has held "[w]hen both parties are fit and proper to have child custody, the trial judge must make the election." *Jones v. Ard*, 265 S.C. 423, 426, 219 S.E.2d 358, 359–60 (1975).

■ This deferential scope of review is consistent with the general approach to accord respect to a family court judge's factual findings, as reflected in the following often cited principle: "Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Lanier v. Lanier*, 364 S.C. 211, 215, 612 S.E.2d 456, 458 (Ct.App.2005) (citing *Cherry v. Thomasson*,

276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981)). "[W]here there is disputed evidence, the appellate court may adhere to the findings of the family court." *Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

## II.

Mother and Father met in the spring of 1998 and began living together soon thereafter. The couple never married. Mother and Father had a rocky relationship almost from the beginning. Mother gave birth to the parties' son on May 27, 1999. The birth of their child did little to solidify the tumultuous relationship between the couple. Regrettably, in the parties' acrimonious relationship, each parent used the child as leverage against the other. The couple experienced many separations and attempts at reconciliation.

Father regularly used marijuana. He even publicly advocated marijuana use, and he ran a business that catered to the marijuana-smoking crowd under the guise of a "music store." The business distributed drug related paraphernalia, such as pipes commonly used to smoke marijuana. Mother regularly used marijuana and alcohol, even when pregnant with the parties' child. Mother also took prescribed antidepressants and tranquilizers, including Paxil, Zoloft, Tranxene, and Valium.

In October 2002, Mother and Father permanently separated. At that time Mother took the child and moved in with her parents. In an effort to see the child, Father called and wrote Mother "on a regular basis," but Mother avoided him. Rather than permit Father to see his son, Mother "directed [Father] to speak to my attorney." Father was denied any contact with his son until he filed this action in January 2003.

In February 2003, the family court issued a temporary order granting temporary custody of the child to the maternal and paternal grandparents "with visitation extended to the mother and father at times agreeable to the respective grandparents." The temporary order further noted "great concerns" with both parents.

## III.

Judge Marion D. Myers presided over the final hearing. Following a lengthy trial (August 30, 2004 through September 8, 2004), the learned and experienced family court judge found both parents fit and awarded custody to Father. There is no challenge to the finding of fitness.

Contested custody cases often bring out the worst in parents. This case was no exception, as each parent relished the opportunity to disparage the other. Each parent gave the other plenty of ammunition, which Judge Myers charitably described as their "shortcomings." As noted, the parents used the child as a pawn in their conflicts. They also used illegal drugs. The evidence additionally revealed Mother's unmistakable tendency to be self-absorbed and self-pitying. The picture of both parties improved during the pendency of the litigation. Judge Myers' finding of fitness reflects his view that the improvement is genuine, as opposed to judicially motivated posturing.

After carefully weighing the evidence, Judge Myers found that despite the parents' "shortcomings," neither parent "can *now* be deemed to be an unfit parent and neither party's love for this child is in doubt." (emphasis in original). Judge Myers considered the "totality of the circumstances" and concluded: (1) "the child in the long run would benefit more from being in father's custody than mother's"; (2) "the father would provide the child with the best and probably the only opportunity to have a good relationship with both of the child's parents and their families"; and (3) "from my own observation of the demeanor and attitude of the parents that the father appears to have a stronger focus on the daily welfare and care of the child than does the mother." We find ample support in the record for these findings.

## IV.

Mother contends the family court erred in failing to impose on Father the burden of demonstrating a "change of circumstances" and in admitting Dr. Elizabeth Baker Gibbs' opinion testimony. Mother additionally challenges the findings favoring the custody award to Father, essentially complaining

about the family court's failure to give weight to Mother's take on the evidence.

### A.

Mother contends this is a "change of circumstances" case in light of section 20–7–953(B) of the South Carolina Code (1985). Consequently, Mother claims the family court erred by evaluating the evidence based on the "totality of the circumstances." We disagree.

We first note that this issue is not preserved. Even assuming Mother asserted this argument to the family court, Judge Myers did not address the issue in the final order, and no motion for reconsideration was filed.[2] "Where a party raises an issue, but the issue is never ruled on by the trial court, and the party fails to file a motion to alter or amend, the issue is not preserved." Jean Hoefer Toal, Shahin Vafai & Robert A. Muckenfuss, *Appellate Practice in South Carolina* 58 (2d ed.2002) (citing *S.C. Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Group*, 347 S.C. 333, 554 S.E.2d 870 (Ct.App.2001)). We address the issue, however, because "procedural rules are subservient to the court's duty to zealously guard the rights of minors." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000).

---

2. In an apparent attempt to circumvent our issue preservation rules, Mother now argues the family court lacked subject matter jurisdiction because Father did not expressly invoke section 20–7–953(B) as the basis for his custody claim. *See, e.g., Town of Hilton Head Island v. Godwin*, 370 S.C. 221, 224, 634 S.E.2d 59, 60–61 (Ct.App.2006) ("The lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised sua sponte by the court."). We disagree. Subject matter jurisdiction is the power of a court to hear cases in the general class to which the proceedings in question belong. *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994). The family court has jurisdiction over custody disputes. S.C.Code Ann. § 20–7–420 (1985 & Supp.2005). Moreover, the gravamen of Mother's argument is not the jurisdiction of the family court to hear a custody case, but the failure of the family court to impose a change of circumstances burden on Father. Subject matter jurisdiction and application of a burden of proof (to a claim within the court's jurisdiction) are different concepts.

■ Mother's specific contention is that a statute concerning paternity, section 20–7–953(B), imposes on Father the burden of showing a substantial change of circumstances to gain custody. Section 20–7–953(B) provides:

Unless the court orders otherwise, the custody of an illegitimate child is solely in the natural mother unless the mother has relinquished her rights to the child. If paternity has been acknowledged or adjudicated, the father may petition the court for rights of visitation or custody in a proceeding before the court apart from an action to establish paternity.

The issue as framed by Mother presents the following question: when parents are not married, does the law mandate a change of circumstances burden on every father who seeks custody? The answer is "no." We find nothing in the language of the statute (which is found in the subarticle titled "Determination of Paternity") suggesting the result advocated by Mother. *See Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."). In giving a father the right to petition the family court for custody, the statute makes no mention of a change of circumstances burden. This plain reading of the statute is in accord with the general legal principle that the imposition of a change of circumstances burden applies when a parent seeks to alter a prior custody order. *See Latimer v. Farmer,* 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004) (holding that when a previous order addressing the issue of custody exists, a showing of changed circumstances is required for a court to grant a *change* in custody).

■ Another legal principle in line with our holding today is the established rule in South Carolina that "in custody matters, the father and mother are in parity as to entitlement to the custody of a child." *Brown v. Brown,* 362 S.C. 85, 91, 606 S.E.2d 785, 788 (Ct.App.2004). "[T]here is no preference given to the father or mother in regard to the custody of the child[;][t]he parents stand in perfect equipoise as the custody analysis begins." Id. We additionally note that Mother and Father were living together when their child was born, and there was never any question as to paternity. The family court in this case was presented with an initial custody

determination. In an initial custody determination, the parents are on equal footing.

We hold the family court properly determined custody based on the "totality of the circumstances." "The paramount and controlling factor in every custody dispute is the best interests of the children." *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 191, 612 S.E.2d 707, 711 (Ct.App. 2005); *see also Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996) ("The welfare and best interests of the child are paramount in custody disputes."). In making initial custody decisions "the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed." *Wheeler v. Gill*, 307 S.C. 94, 99, 413 S.E.2d 860, 865 (Ct.App.1992) (quoting *Davenport v. Davenport*, 265 S.C. 524, 527, 220 S.E.2d 228, 230 (1975)).

## B.

Mother next asserts the family court erred in admitting much of Dr. Elizabeth Baker Gibbs' opinion testimony. We disagree.

At trial, evidence was presented about an investigation by the South Carolina Department of Social Services (DSS) concerning alleged abuse of the child. On May 3, 2004, after the child spent a weekend with Father, the maternal grandmother, Johanna Garner, noticed bruising on the child and took him to the doctor. Dr. Meghan Geils examined the child and filed a report with DSS, although she acknowledged she lacked extensive training in child abuse matters and also candidly admitted she was not "able to determine the cause of the bruises." Garner emphasized that she was "concerned" about the child, even though Dr. Geils reported the child "wasn't upset" and seemed like "[j]ust a normal little boy."

This scenario repeated itself on May 17 when Garner brought the child to Dr. Geils' office. Garner expressed the "same concerns." Dr. Geils observed a bruise but further noted the child was "happy" and "fine." When asked what she did "as a result of that visit," Dr. Geils responded, "I didn't do anything. The grandmother ... had already taken pictures and had already re-notified DSS that there was another abuse."

DSS investigated the abuse allegations against Father and determined the allegations were "unfounded."

Confronted with the abuse allegations (but prior to the "unfounded" determination by DSS), Father took the child to the Carolina Medical Assessment Center. Dr. Elizabeth Baker Gibbs is the Medical Director of the Carolina Medical Assessment Center. The Center provides numerous child related services, including forensic medical services for victims of child abuse. Dr. Gibbs examined the child and interviewed the parents and Garner.

Father presented Dr. Gibbs as an expert witness "on whether the child was a victim of abuse and neglect." The family court, without objection, qualified Dr. Gibbs as an expert. Dr. Gibbs testified the bruises and abrasions on the child were "non-specific." Dr. Gibbs specifically stated the child's "lesions were non-specific which would be lesions that we would commonly find on him[,] especially an active child his age." [3] The child informed Dr. Gibbs that he had fallen off a chair at Garner's house. It was Dr. Gibbs' opinion that the child had not been abused.

As part of her evaluation, Dr. Gibbs spoke with Father, Mother, and Garner. According to Dr. Gibbs:

> From the first time I talked with [Father], his focus was really almost entirely based around [the child].... When I talked to [Mother], her focus was around the effect all of this was having on her; not the effect that this was having on [the child].... We tried several different techniques and we were unable to get [Mother] to shift her focus to a child-focus perspective.

Mother did not object to the foregoing testimony and, consequently, she may not now assign error to its admission and consideration by the family court. Failure to object when evidence is offered constitutes a waiver of the right to object, and the issue may not then be raised for the first time on appeal. *Crawford v. Crawford*, 321 S.C. 511, 514, 469 S.E.2d 622, 624 (Ct.App.1996). Mother only objected when Dr. Gibbs was asked how long it would take for Mother to learn to be

---

3. Dr. Gibbs used the term "lesions" to describe bruises, scratches and "anything on the skin that is what we're looking for."

more child-focused. The family court found the testimony within Dr. Gibbs' expertise and overruled Mother's objection. Thereafter, Dr. Gibbs opined:

> Either way, my concern is that the conflict is going to continue which can be very damaging to children. I would be concerned that if [Mother] has the primary care and control, that the conflict will continue at the current level or maybe even more so. If [Father] had primary care and control, I do see him more motivated in decreasing the conflict.

 We find no merit to Mother's challenge to Dr. Gibbs' testimony. Rule 702, SCRE, provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Generally, "[w]hether a witness has qualified as an expert, and whether his opinion is admissible on a fact in issue, are matters resting largely in the discretion of the trial judge." *Prince v. Associated Petroleum Carriers,* 262 S.C. 358, 365, 204 S.E.2d 575, 579 (1974). "A trial court's ruling to exclude or admit expert testimony will not be disturbed on appeal absent a clear abuse of discretion." *Mizell v. Glover,* 351 S.C. 392, 406, 570 S.E.2d 176, 183 (2002). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005).

The record indicates Dr. Gibbs has impressive credentials in dealing with dysfunctional families and possesses specialized knowledge in forensic medicine in evaluating allegations of child abuse. Dr. Gibbs' knowledge, skill, experience, training, *and* education clearly satisfy the requirements of Rule 702. We conclude the family court did not abuse its discretion in admitting Dr. Gibbs' so-called "expanded" testimony. It is our judgment that Mother's tardy objection to Dr. Gibbs' testimony goes more to the weight of the evidence than its admissibility.

 Furthermore, we would be hard-pressed to characterize any error in admitting Dr. Gibbs's "expanded" testi-

mony as amounting to reversible error. To warrant reversal based on the admission or exclusion of evidence, the complaining party must prove both error and resulting prejudice. *Hanahan v. Simpson*, 326 S.C. 140, 156, 485 S.E.2d 903, 911 (1997). As pointed out by Mother, the family court relied in part on Dr. Gibbs' testimony in awarding custody to Father. Yet the record contains other evidence of Mother's focus on herself.

For example, Mother kept a journal (admitted without objection) in 2002 as a result of a self-help book, *Self Matters*, written by Dr. Phil McGraw. Examples of Mother's journal entries include: "I over-exaggerate things to create drama and appear to be the victim in most situations"; "I lack basic coping skills and have used alcohol and/or drugs as a way to anesthetize"; "I can be unpleasant and resentful when I don't get my way"; and "I'm the victim," a statement Mother underlined three times. Based on the journal entries, Mother admitted on cross-examination that she has "general feelings of being taken advantage of, lied to, gossiped about, [and] used and abused."

We cite this example not to disparage Mother in any way. As noted by Judge Myers, Mother has made laudable strides during the pendency of this custody suit. Judge Myers found that Mother is now a fit parent. We cite this evidence only to illustrate that Dr. Gibbs' testimony is certainly not the only evidence tending to establish that Mother tends to be self-absorbed and self-pitying. We view Dr. Gibbs' opinion about Mother's focus on self as cumulative to other evidence in the record.

## C.

We turn finally to Mother's broad challenge that the best interests of the child dictate she be awarded custody. In essence, Mother assigns error to the adverse findings against her and the more positive findings in favor of Father. Mother, of course, views the evidence in a different light than determined by the family court.

We categorically reject the suggestion that the record does not support the finding that Mother has difficulty putting the child's needs first. When the parents separated for the last

time, Mother prevented Father from visiting the child for several months. There was no valid reason to prevent Father from having *any* contact with his son. Under these circumstances, Mother's mandate that Father contact her attorney cannot reasonably be construed as a viable response to accommodate visitation. Mother's journal entries and her own testimony further buttress the family court's finding.[4]

We additionally find support in the record for the finding that the "mother's and her family's repeated unfounded accusations and unfounded charges against the father have contributed greatly to their bad relationship and inability to communicate with each other." Their bogus allegations that Father committed child abuse is one example. Another example is Mother's complaint to law enforcement, which resulted in a charge against Father for assault with intent to kill. This unfounded charge arose from an incident on August 22, 2003, when Mother claimed Father tried to kill her with his car.[5] The charge was dismissed at a preliminary hearing. The Solicitor apparently refused to pursue a direct indictment against Father. Father had the record of his arrest expunged. Our review of the evidence is in line with the family court's finding. We find no abuse of discretion.

Judge Myers found Father "appears to have a stronger focus on the daily welfare and care of this child than does the mother." This finding is tied to Judge Myers' additional finding that Father "is committed to supporting the child's relationship with his mother notwithstanding his questionable conduct and judgment at times in other areas." Judge Myers further noted that Father has a teenage daughter with whom

---

4. It is fair to say, however, that Mother does not have the self-centered market cornered. The child's guardian ad litem, Graham Hawkins, had substantial contact with the parents. Mr. Hawkins observed that *both* parents used the child as a pawn in their feud. Both parents have "exposed" the child "to quite a lot of conflict between" them.

5. At trial, Mother merely stated that Father "accelerated the car at me." Mother in hindsight recast the incident as less serious. Yet law enforcement charged Father with assault with intent to kill based on information from Mother and Garner. When Father was arraigned at a bond hearing the morning after his arrest, the press and Mother appeared. Mother informed the magistrate she was afraid of Father. She subsequently wrote the magistrate, claiming she was "scared to death" of Father.

he has "a very close [and] loving relationship." Given the posture of the case, Mother understandably seeks to cast the evidence in a much more negative light toward Father. We readily acknowledge that Father's side of the ledger has "shortcomings," a fact which did not escape Judge Myers. We decline, however, to recast the evidence so that the scales tip in favor of Mother.

Judge Myers was presented with a difficult decision between fit parents. In our firm judgment, the record supports the view that the child's best interest is served by an award of custody to Father. We certainly cannot say that the award of custody to the Father amounts to an abuse of discretion.

■ There is no single factor that controls in a custody dispute, for the analysis is necessarily a fact-driven inquiry covering the totality of the circumstances. *Woodall*, 322 S.C. at 11, 471 S.E.2d at 157 (holding that "when determining to whom custody shall be awarded ... all of the circumstances of the particular case, and all relevant factors must be taken into consideration"). Judge Myers thoughtfully and thoroughly considered the totality of the circumstances.

## V.

Contested custody cases present difficult decisions for family court judges. In situations where there is a striking difference in the fitness of one parent over another, the issue of custody is often resolved short of litigation. Litigation seems to follow those cases where an arguably close question is presented. This is such a case. Mother's excellent counsel have forcefully advanced the evidence in a light most favorable to her. Judge Myers was keenly aware of the parties' respective positions and "shortcomings," and the record manifests his recognition of the importance of the decision before him. While the law reflects deference to a family court judge in deciding between fit parents, we, too, have an important responsibility to ensure that a custody award does not amount to an abuse of discretion. We have canvassed the record and carefully considered the arguments presented on appeal. We

404

find ample support for Judge Myers' findings and his decision to award custody to Father.

**AFFIRMED.**

STILWELL, J., and CURETON, A.J., concur.