**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Arleigh Burke Lacefield, Respondent,

v.

Ginger Yvonne Lacefield, Appellant.

Appellate Case No. 2024-000881

———————

Appeal From Beaufort County
Douglas L. Novak, Family Court Judge

———————

Opinion No. 2025-UP-351
Heard September 9, 2025 – Filed October 13, 2025

———————

**AFFIRMED**

———————

Mary Fran Quindlen and Jeffrey Scott Stephens, both of Quindlen Law Firm, P.A., of Beaufort, for Appellant.

J. Michael Taylor, of Taylor/Potterfield, of Columbia; and Bridget Hillebrand Norton, of Beaufort, both for Respondent.

Katherine Graham Ferguson, of Ferguson & Ferguson, of Beaufort, for the Guardian ad Litem.

———————

**PER CURIAM:**  In this domestic matter, Ginger Yvonne Lacefield (Mother) appeals an order of the family court awarding primary custody of her three minor children to Arleigh Burke Lacefield (Father) as well as the family court's order denying her motion for reconsideration and granting attorney's fees to Father.  On appeal, Mother argues the family court erred in (1) awarding primary physical custody to Father; (2) failing to apply relocation factors from South Carolina case law to its custody determination; and (3) awarding attorney's fees to Father on Mother's motion for reconsideration.  We affirm.

**FACTS/PROCEDURAL HISTORY**

Father and Mother married in 2003 in Virginia.[1]  Together they had four children during the marriage: XL born 2005, SL born 2008, JL born 2010, and ML born 2021.  At the time of the final trial, XL was emancipated.  The parties separated on or about January 14, 2022, and they continued to live separate and apart since that time.

On March 2, 2022, Father filed an action seeking separate support and maintenance, child support, attorney's fees, restraining orders, and joint custody of the minor children, among other relief.  Mother answered and counterclaimed, seeking separate support and maintenance, child support, attorney's fees, primary physical and legal custody of the three minor children, and other various relief.  Mother subsequently filed a motion for temporary relief, seeking primary legal and physical custody during the litigation, among other relief.  Father filed a reply to Mother's counterclaim, requesting the family court dismiss Mother's counterclaim.

By consent of the parties, the family court issued a temporary order on May 25, 2022, setting out specific parenting time for May and June and providing that the parties would alternate parenting time in July and August.  The consent order set a date for a temporary hearing, appointed a GAL, and required Father to pay child support to Mother.  The family court issued a second temporary order on October 10, 2022, granting the parties joint custody of the children, with parenting time alternating every other week.

On April 12, 2023, Father filed a motion for temporary relief, indicating a substantial change in circumstances as he had received a permanent change of duty station order to Hampton Roads, Virginia, effective July 2023.  Among other

---

[1] Father was a Lieutenant Colonel in the United States Marines at the time of trial. The parties relocated to Beaufort, South Carolina, in the spring of 2021 based on Father's military orders.

relief, Father requested the parties continue joint legal custody with the modification that he be the tie-breaker, but he requested primary physical custody of the minor children and the ability to relocate to Virginia. In the alternative, Father requested joint physical custody should Mother choose to move to Hampton Roads, Virginia.

Mother subsequently filed a petition in support of a rule to show cause, alleging that Father violated the temporary order's prohibition against discussing the litigation with the children by discussing his potential move to Virginia with them. Mother further alleged Father violated the temporary order by (1) failing to notify her when he left town and left the children in the care of a third party; (2) leaving XL home alone for eight nights in November 2022; (3) yelling at and spitting on Mother, in the children's presence, during a custody exchange; and (4) making disparaging remarks about Mother in front of the children.

Following a four-day trial in August 2023, the family court issued its final order on January 8, 2024, granting, among other relief, a divorce on the ground of one year's continuous separation; joint legal custody of the children with Father having primary physical custody; and child support to be paid by Mother. Additionally, while the family court found an award of attorney's fees to Father would be appropriate, it ultimately decided not to award attorney's fees based on the financial disparity between the parties. Regarding Mother's rule to show cause, the family court found Father in willful contempt for violating the temporary order by discussing the litigation with the children and by engaging in improper behavior toward Mother; however, the family court found Mother failed to establish a willful violation as to her allegations that Father left XL home alone overnight and left the minor children in the care of a third party.

Mother filed a motion for reconsideration, and the family court denied her motion following a hearing. In its denial, the family court granted attorney's fees to Father for Mother's motion for reconsideration and amended the visitation schedule at the request of the GAL. This appeal followed.

**ISSUES ON APPEAL**

I.  Did the family court err in awarding joint custody, with Father having primary placement of the children?

II. Did the family court err in making its relocation determination?

III. Did the family court err in awarding attorney's fees to Father for Mother's

motion for reconsideration?

**STANDARD OF REVIEW**

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Therefore, this court may find facts in accordance with its own view of the preponderance of the evidence. *Posner v. Posner*, 383 S.C. 26, 31, 677 S.E.2d 616, 619 (Ct. App. 2009). "However, this broad scope of review does not require this [c]ourt to disregard the findings of the family court." *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011) (quoting *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)). Appellate courts must recognize that the family court was better positioned to evaluate witnesses' credibility and weigh their testimony. *Posner*, 383 S.C. at 31, 677 S.E.2d at 619. However, de novo review "does not relieve an appellant from demonstrating error in the [family] court's findings of fact." *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652.

**LAW/ANALYSIS**

**I.      JOINT CUSTODY**

Mother argues the family court erred in awarding Father primary placement based on its finding that Father had become the primary caretaker. We disagree.

"The controlling considerations in all child custody controversies are the child's welfare and best interest." *Daily v. Daily*, 432 S.C. 608, 618, 854 S.E.2d 856, 862 (Ct. App. 2021). "[A] determination of the best interest of the children is an inherently case-specific and fact-specific inquiry." *Id.* (alteration in original) (quoting *McComb v. Conard*, 394 S.C. 416, 423, 715 S.E.2d 662, 665 (Ct. App. 2011)). "It is also appropriate to consider the opinions of third parties, including the GAL and expert witnesses." *Id.*

"In reaching a determination as to custody, the family court should consider how the custody decision will impact all areas of the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects." *Shirley v. Shirley*, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000). "Additionally, the court must assess each party's character, fitness, and attitude as they impact the child." *Id.*

"Subsection 63-15-240(B) of the South Carolina Code (Supp. [2024]) provides additional factors to consider." *Daily*, 432 S.C. at 619, 854 S.E.2d at 862. These factors include:

(1) the temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) the preferences of each child; (4) the wishes of the parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings, and any other person, including a grandparent, who may significantly affect the best interest of the child; (6) the actions of each parent to encourage the continuing parent-child relationship between the child and the other parent, as is appropriate, including compliance with court orders; (7) the manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) any effort by one parent to disparage the other parent in front of the child; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school, and community environments; (11) the stability of the child's existing and proposed residences; (12) the mental and physical health of all individuals involved, . . . ; (13) the child's cultural and spiritual background; . . . (16) whether one parent has relocated more than one hundred miles from the child's primary residence in the past year, unless the parent relocated for safety reasons; and (17) other factors as the court considers necessary.

§ 63-15-240(B). "In making initial custody decisions 'the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed.'" *Altman v. Griffith*, 372 S.C. 388, 398, 642 S.E.2d 619, 624 (Ct. App. 2007) (quoting *Wheeler v. Gill*, 307 S.C. 94, 99, 413 S.E.2d 860, 865 (Ct. App. 1992)).

"The relative fitness of parents is an important issue in custody litigation. . . . Fitness decisions normally turn on either of two considerations; whether either parent has been the primary caretaker, or whether either parent has engaged in conduct which would affect the welfare of the child." *Brown v. Brown*, 362 S.C. 85, 91, 606 S.E.2d 785, 788 (Ct. App. 2004) (quoting Roy T. Stuckey, *Marital Litigation in South Carolina* 433 (3rd ed. 2001)). "Although there is no rule of law requiring custody be awarded to the primary caretaker, there is an assumption that custody will be awarded to the primary caretaker." *Id.* (quoting

*Patel v. Patel*, 359 S.C. 515, 527, 599 S.E.2d, 114, 120 (2004)).

The ultimate custody determination "rests primarily on the [family court]'s assessment of witness demeanor and credibility." *Altman*, 372 S.C. at 393, 642 S.E.2d at 622. "In gauging between fit parents as to who would better serve the best interests and welfare of the [children] in a custodial setting, the family court judge is in a superior position to appellate judges who are left only to review the cold record." *Id.* Therefore, "custody determinations largely rest in the sound discretion of the family court judge." *Id.*

We hold the family court's findings show it properly considered the relevant factors in making its custody determination. *See Reed v. Pieper*, 393 S.C. 424, 433, 713 S.E.2d 309, 314 (Ct. App. 2011) ("The family court's in-depth findings show it properly considered the fitness of each parent and the relevant factors that would affect [the child's] best interests in making its custody determination."). We further hold the family court's grant of primary placement to Father serves the best interest of the children. *See Simmons*, 392 S.C. at 414, 709 S.E.2d at 667 ("In appeals from the family court, this [c]ourt reviews factual and legal issues de novo."); *Daily*, 432 S.C. at 618, 854 S.E.2d at 862 ("The controlling considerations in all child custody controversies are the child's welfare and best interest."). While we exercise a degree of deference to the family court's discretion given its superior ability to evaluate witness credibility, our review of the record indicates Father was more invested in the education and religious engagement of the children, while Mother drifted from her parental responsibilities. *See Altman*, 372 S.C. at 393, 642 S.E.2d at 622 (stating that because the family court can assess witness demeanor and credibility, "custody determinations largely rest in the sound discretion of the family court judge"); *Posner*, 383 S.C. at 31, 677 S.E.2d at 619 (stating the de novo standard of review applied to appeals from the family court allows the appellate court to find facts in accordance with its own view of the preponderance of the evidence); *Daily*, 432 S.C. at 619, 854 S.E.2d at 862 (alteration in original) ("Determination of the child's best interest requires consideration of the 'character, fitness, attitude, and inclinations on the part of each parent as they impact the child' as well as the 'psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life.'" (quoting *Woodall*, 322 S.C. at 11, 417 S.E.2d at 157)). Further, we find Father has stepped into the role of primary caregiver. *See Brown*, 362 S.C. at 91, 606 S.E.2d at 788 ("Fitness decisions normally turn on either of two considerations; whether either parent has been the primary caretaker . . . ." (quoting Stuckey, *supra* at 433)); *Chastain v. Chastain*, 381 S.C. 295, 304, 672 S.E.2d 108, 112 (Ct. App. 2009) (indicating the role of primary caretaker may shift from one parent to another);

*Burns v. Burns*, 293 S.C. 1, 3, 358 S.E.2d 168, 169 (Ct. App. 1987) (awarding custody of three minor children to the father even though the mother had served as the primary caregiver for the children).  Therefore, we affirm the family court's award of joint custody with primary physical placement to Father.[2]

## II.    RELOCATION TO VIRGINIA

Mother argues the family court failed to consider relocation factors when making its custody determination and that these factors weighed against relocation.

"Cases involving the relocation of a custodial parent are some 'of the most challenging problems our family courts encounter.'"  *Daily*, 432 S.C. at 619, 854 S.E.2d at 862 (quoting *Latimer v. Farmer*, 360 S.C. 375, 380, 602 S.E.2d 32, 34 (2004)).  "[A] parent cannot be refused custody simply because he/she intends to take the child to a distant state."  *Gandy v. Gandy*, 442 S.C. 340, 351, 898 S.E.2d 208, 213 (Ct. App. 2024) (alteration in original) (quoting *Marshall v. Marshall*, 282 S.C. 534, 541, 320 S.E.2d 44, 49 (Ct. App. 1984)), *remanded for recalculation of child support*, 444 S.C. 516, 909 S.E.2d 401 (2024) (per curiam).  "In all child custody cases, including relocation cases, the controlling considerations are the child's welfare and best interests."  *Latimer*, 360 S.C. at 381, 602 S.E.2d at 35.  "The effect of relocation on the child's best interest is highly fact specific."  *Id.* at 382, 602 S.E.2d at 35.  "It should not be assumed that merely relocating and potentially burdening the non-custodial parent's visitation rights always negatively affects the child's best interests."  *Id.*

"Our supreme court, without endorsing or enumerating a specific test, has highlighted relevant factors other states consider when confronted with parental relocation."  *Daily*, 432 S.C. at 619, 854 S.E.2d at 862.

> These factors are: (1) the economic, emotional, and
> educational advantages of the move; (2) the child's

---

[2] We acknowledge Father's shortcomings.  As the family court found and the GAL determined in her final report, both parties demonstrated an inability to communicate with each other, and the evidence indicates particularly concerning behavior from Father.  However, we ultimately find the evidence indicates Father engaged in concerning behavior primarily targeted toward Mother, and we do not find this evidence lends skepticism to his ability to parent the children.  On the other hand, we agree with the family court's assessment that Mother's behavior demonstrates a "significant shift in participation and engagement with the minor children."

relationship with both parents and the impact of the move on the non-custodial parent's relationship with the child; (3) the availability and feasibility of a realistic substitute visitation arrangement, including technology, that will adequately preserve and foster the child's relationship with the non-custodial parent; (4) each parent's motive for seeking or opposing the relocation; and (5) the likelihood the move is not the result of a whim but would substantially improve the quality of life for the custodial parent and child.

*Id.* at 619–20, 854 S.E.2d at 862.

We disagree with Mother's argument that the family court erred by failing to specifically consider the *Latimer* factors. Our law indicates that these factors, although instructive, are not required to be considered by the family court in a relocation determination. *See Latimer*, 360 S.C. at 382, 602 S.E.2d at 35 ("We do not endorse or specifically approve any of these factors for consideration, but merely provide the following for consideration in determining whether a child's best interests are served."); *Daily*, 432 S.C. at 619, 854 S.E.2d at 862 (indicating our supreme court has not endorsed or enumerated a specific test but instead has highlighted various factors considered in other jurisdictions). Nevertheless, we find the family court folded an analysis of several of these factors into its determination by considering the educational opportunities for the minor children in Virginia, Father's motive and reason for the move, and whether the move would substantially improve the lives of the minor children by allowing them the "opportunity to thrive."

To the extent Mother argues the family court erred by allowing Father to relocate with the minor children, we hold that under our de novo review, it is in the children's best interest to relocate with Father to Virginia. *See Latimer*, 360 S.C. at 381, 602 S.E.2d at 35 ("In all child custody cases, including relocation cases, the controlling considerations are the child's welfare and best interests."); *id.* at 381, 602 S.E.2d at 35 ("The effect of relocation on the child's best interest is highly fact specific. It should not be assumed that merely relocating and potentially burdening the non-custodial parent's visitation rights always negatively affects the child's best interests."); *Daily*, 432 S.C. at 619, 854 S.E.2d at 862 (listing factors instructive to a relocation determination). Father received military orders to move to Virginia and has robust family support there. We find relocation to Virginia would substantially improve the quality of life for the children based on this available family support. *See Latimer*, 360 S.C. at 384, 602 S.E.2d at 36–37 (finding

custodial Father's relocation of children to Michigan would improve their quality of life in part based on the "stable family environment" Father had in Michigan and the close vicinity of his siblings, which contrasted Mother's "history of familial discord"). Father testified his new residence would be about a seven-minute drive from his parents, a ten-minute drive from his niece, and about thirty minutes from his sister. Additionally, Father testified Mother's sister lived about an hour-and-a-half from Virginia Beach. Father testified his family gathered "frequently" for family functions, holidays, or other events. Father further explained that JL and SL had always stayed connected with their cousins in the Virginia Beach area and that they had been close since a young age. In contrast, Mother's testimony indicated a limited familial presence in or near South Carolina. We also find the minor children will be served with educational, social, and extracurricular advantages in Virginia. The testimony indicated JL and SL had experienced limited social interactions in South Carolina outside of school, and JL had not been involved in any activities at her new middle school. In contrast, Father recalled that when the family lived in Virginia Beach, the children "always had friends in the neighborhood." Father testified he had found "good" schools for JL and SL in the Virginia Beach area with potential extracurricular opportunities and academic specializations. He indicated he had reserved ML a spot at a daycare in the area and that it was "well put together" with a "pretty solid curriculum."

Moreover, Father expressed a commitment to "maximizing" Mother's visitations, stating his willingness to offset the cost of Mother driving to Virginia to pick up the children or to drive the children himself to South Carolina if necessary.

Accordingly, we affirm the family court on this issue. *See Latimer*, 360 S.C. at 381, 602 S.E.2d at 35 ("In all child custody cases, including relocation cases, the controlling considerations are the child's welfare and best interests."); *Posner*, 383 S.C. at 31, 677 S.E.2d at 619 (stating an appellate court "may find facts in accordance with its own view of the preponderance of the evidence").

## III. ATTORNEY'S FEES

Mother argues the family court erred in awarding attorney's fees to Father for her motion to reconsider. We hold the family court properly exercised its authority in awarding attorney's fees and there is sufficient evidence in the record to support both the family court's decision to award attorney's fees and the amount of attorney's fees it awarded. *See* S.C. Code Ann. § 63-3-530 (2010) (indicating the family court has authority to award attorney's fees to a party when requested); *Couch v. Couch*, 431 S.C. 170, 180, 847 S.E.2d 260, 265 (Ct. App. 2020) ("[O]n appeal, an award for attorney's fees will be affirmed so long as sufficient evidence

in the record supports each factor." (quoting *Nelson v. Nelson*, 428 S.C. 152, 187, 833 S.E.2d 432, 450 (Ct. App. 2019))).

The family court should consider the following factors in determining whether to award an attorney's fee: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). When determining the amount of attorney's fees to be awarded, the family court should consider the following factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

In its final order, the family court found an award of attorney's fees to Father was warranted and appropriate; however, due to the financial disparity between the parties, it ultimately found an award of attorney's fees inappropriate. In its subsequent order on Mother's motion for reconsideration, the family court awarded Father attorney's fees. It indicated it "carefully considered" the applicable factors found in *E.D.M.* in deciding whether to award attorneys' fees, and it indicated it weighed the *Glasscock* factors in determining the amount of the award. The family court found "the time and efforts necessarily devoted to defending the [motion for reconsideration were] commiserate and appropriate, with and to, the nature and complexity of the issues raised." It further found the attorneys involved were "exemplary members of the Family Court Bar," Father was successful on the motion, and the requested amount was "well within" a customary charge for the area. Thus, we affirm the family court's award of attorney's fees and costs.

**CONCLUSION**

Based on the foregoing, the orders of the family court are **AFFIRMED**.

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**