2496

Vivian L. CRAWFORD, Respondent v. John W. CRAWFORD, Appellant.

(469 S.E. (2d) 622)

Court of Appeals

*Cheryl Turner Hopkins*, Florence, *for appellant.*

*D. Malloy McEachin, Jr.*, of *Porter & McEachin*, Florence, *for respondent.*

Submitted Mar. 5, 1996.

Decided Apr. 15, 1996.

HOWELL, Judge:

In this domestic action, John W. Crawford, the husband, appeals a lien placed on his federal retirement benefits to secure payment of alimony, the distribution of certain items of personal property, the award of attorney's fees to the wife, the trial judge's factual findings, the order requiring him to remove a storage building from the wife's property, and the valuation of marital property held by the wife.

The parties were married on September 29, 1957, and have two emancipated children. The parties resided in Florence County, South Carolina until their separation. In May of 1992, the husband told the wife he was going to retire from the Department of Defense on August 28, 1992, and they were going to move to Burlington, North Carolina. The parties planned to live for two years in a trailer in North Carolina which the husband had renovated, and eventually planned to move into a house that they would build. The parties sold their house. In May of 1992, the wife moved to North Carolina, but the husband remained employed in Florence and visited the wife on weekends. The wife gave up her job as a cafeteria worker for a middle school in Florence. The wife became employed at a lower rate of pay as a cafeteria worker in Burlington, North Carolina. The parties opened a bank account in North Carolina and deposited the money from the sale of the house.

At some point, the husband changed the account so that the wife could not withdraw funds without his signature. In July of 1992, the wife went to Florence to stay with her husband. The wife testified the husband told her to return to North Carolina because "he had his place" and she had her own. On August 27, 1992, the day before the husband planned to retire, he contacted the wife and informed her he was not going to retire and the marriage was "no good." The husband testified he could not retire because he had been in an accident while using a government car, which had to be "cleared up" before he could retire. At the time of the hearing, the husband had not retired although the matter had been cleared up for a long time. After seeking the advice of a North Carolina attorney, the wife changed the locks on the North Carolina home and withdrew the parties' savings, placing the money in her own account.

The parties were divorced on February 18, 1994, at which time the trial judge equally divided the marital assets granting each party assets totaling $88,434.00. The trial judge awarded the wife alimony in the amount of $500 a month and attached a lien on the husband's retirement fund in the amount of $12,000 as security for payment of alimony. The lien is to dissolve five years from the date of the first payment of alimony. In distributing the marital assets, the trial judge awarded the husband the storage building and required him to remove it from the wife's property in North Carolina, leaving the land leveled and clean. The trial judge also awarded the wife attorney's fees and costs of $4,350.

The husband moved to alter, amend, set aside or vacate the judgment alleging the trial judge: (1) misapprehended the ability of the storage building to be removed, (2) inadvertently failed to make a disposition of certain items of personal property including the Noritake China, the Emmett Kelly Clowns, the Madam Alexander Doll collection, and the gas pack (the collectibles), and (3) misapprehended the true value of the assets held by the wife. After reconsideration, the trial judge affirmed his previous decision concerning the storage building. In terms of the disposition of the collectibles, the trial judge stated the initial order was correct with respect to the Madam Alexander Doll Collection and the gas pack. The trial judge amended the initial order and found the Emmett

Kelly Clowns and the Noritake China to be nonmarital property, belonging to the parties' adult children. In addition, the trial judge ordered the wife to pay the husband one half of the value of a third IRA which was listed on the husband's financial declaration as belonging to the wife.

The husband appeals the lien, the award of attorney's fees to the wife, the failure of the trial judge to make specific factual findings, the order requiring him to remove the storage building from the wife's property, the distribution of the collectibles, and the valuation of marital property held by the wife. The husband failed to preserve the issues of attorney's fees, the trial judge's failure to make specific findings, and the lien. As to the attorney's fees, the husband argues the trial court erred in awarding attorney's fees to an out-of-state attorney. At the hearing, the wife introduced the attorney's fees without objection from the husband. The husband also failed to object to the introduction of the wife's valuation of assets. Finally, the husband failed to object to the wife's introduction of the issue of security for alimony during the hearing.[1] Thus, these issues are not preserved for appeal. *See State v. Black*, 319 S.C. 515, 462 S.E. (2d) 311 (Ct. App. 1995) (The failure to object when evidence is offered constitutes a waiver of the right to object, and the issue may not then be raised for the first time on appeal). The only issues preserved for out review are the order to remove the storage building and the distribution of the collectibles.

The husband argues the trial judge erred in finding the collectibles nonmarital property. Marital property is that real and personal property acquired by the spouses during the marriage which is owned by them at the date of filing of marital litigation. S.C. Code Ann. § 20-7-473

---

[1] The wife argues pleadings in family court must be liberally construed. The wife is apparently referring to Rule 12 of the former Family Court Rules which became effective July 1, 1977 but were repealed September 1, 1988 by enactment of the South Carolina Rules of Family Court. *See* Rule 2(d), SCRFC. There is no such equivalent rule in the current Rules of Family Court. Moreover, former Rule 12 was never construed to allow family courts to grant relief not contemplated in the pleadings. *See, e.g., Loftis v. Loftis*, 286 S.C. 12, 331 S.E. (2d) 372 (Ct. App. 1985) (although Family Court Rule 12 requires pleadings to be liberally construed in family court, this rule cannot be expanded to permit the award of relief not contemplated by the pleadings or the evidence).

(Supp. 1995); *Panhorst v. Panhorst*, 301 S.C. 100, 390 S.E. (2d) 376 (Ct. App. 1990). The collectibles consist of Madam Alexander dolls, Emmett Kelly clowns, Noritake china, a Noritake tea set, and a gas pack. Both parties testified the dolls were purchased for the parties' daughter. The wife testified the clowns belonged to the parties' son. Both parties testified the husband's mother gave the china to the parties' son and the tea set to the parties' daughter. We find no error in the trial judge's findings that these items were nonmarital property belonging to the children. However, we agree the gas pack was marital property. The husband testified he purchased the gas pack with marital funds. The only evidence of its value is the husband's testimony that it was purchased for $1,500. We remand for the trial judge to equitably distribute the gas pack.

The husband also argues the trial judge erred in requiring him to remove the storage building. We agree.

The trial judge has broad discretion in equitably apportioning the marital estate and his distribution will not be disturbed absent an abuse of discretion. *Murphy v. Murphy*, 319 S.C. 324, 461 S.E. (2d) 39 (1995). The trial judge valued the storage building in the husband's portion of the equitable distribution at $10,000. The storage building is located on the wife's family property. The land was leveled and graded, a cement floor installed, and the building wired for electricity. To remove the building and level the land will require the husband to virtually destroy the value of the building. We find the building is a permanent fixture on the wife's family property and should have been awarded to the wife. *See Creative Displays, Inc. v. South Carolina Highway Dep't*, 272 S.C. 68, 248 S.E. (2d) 916 (1978) (the criteria for determining whether an item becomes a fixture includes mode of attachment, character of the structure, the intent of the parties, and the relationship of the parties). The storage building improves the value of the wife's property if left alone, yet may be worthless if removed. Accordingly, we find the trial judge abused his discretion in awarding the building to the husband, and remand for the trial judge to reconsider the equitable distribution in light of this opinion.

Affirmed in part, reversed in part, and remanded.

GOOLSBY, J., concurs.

CURETON, J., dissents in part.

CURETON, Judge, dissenting in part:

I must respectfully dissent to so much of the majority's opinion that affirms the lien place against the husband's federal retirement benefits. The majority holds that because the husband did not object to the introduction of evidence regarding security for the payment of future alimony or make a post-trial motion regarding same, he is now precluded from raising an objection to the trial court's order.

The wife never requested the furnishing of security in her pleadings, nor did she move to amend her pleadings to conform to the proof to request security. The court's support for its award is found in the following colloquy between the wife and her attorney:

Q. Okay. Now, Mrs. Crawford, had your husband said anything to you about what he would do if he did not like the outcome of this hearing?

A. He told me he would not—he would not pay alimony. That if he didn't like it he would go to Florida.

Q. Should the Court decide, and it's up to the Judge you understand to make any provision for alimony, do you want any **safeguards** in regard to what your husband has said he would do? (Emphasis added.)

A. Yes, sir.

On cross-examination, the husband's counsel asked the wife when the husband made the statement. She replied it occurred a month after the separation. The husband's counsel then asked the wife whether she thought her concerns were legitimate in view of the fact the husband had voluntarily paid alimony for over a year prior to the hearing. The wife answered. "I'm concerned about it."

Initially, I disagree the husband is precluded from raising the issue of security at this time because he made no contemporaneous objection at trial to the above testimony of the wife. This testimony and a review of the transcript simply do not reflect the wife ever requested the court provide for the posting of security for the payment of alimony pursuant to S.C. Code Ann. § 20-3-130(D) (Supp. 1995). There was no way

for the husband to know at trial that the eventual relief granted by the court was even a probability.[1] Due process requires a litigant to be placed on notice of the issues which the court is to consider. *Bass v. Bass*, 272 S.C. 177, 249 S.E. (2d) 905 (1978); *see also* Rule 3, SCRFC, making inapplicable Rule 54, SCRCP, which permits relief to be granted to a party "even if the party has not demanded such relief in his pleadings."

S.C. Code Ann. § 20-3-130(D) permits the court to make "provision for security for the payment of the support including, but not limited to, requiring the posting of money, property, and bonds." Additionally, § 20-7-420(22) empowers the family court to require "a person ordered to support another to give security by a written undertaking that he will pay the sums ordered." However, our court has refused to enforce requirements in divorce decrees that required a husband to provide insurance coverage as security for the payment of future alimony payments in the absence of special or exceptional circumstances. *Hickman v. Hickman*, 294 S.C. 486, 366 S.E. (2d) 21 (Ct. App. 1988); *Hardin v. Hardin*, 294 S.C. 402, 365 S.E. (2d) 34 (Ct. App. 1987). I see no special or exceptional circumstances in the facts of this case to justify the trial court's departure from the usual rule of not requiring security for the payment of alimony. The wife has simply failed to carry her burden of showing circumstances to justify the imposition of security for the payment of future alimony. In any case, the amount of the lien bears no relationship to the risk presented by the nonpayment of alimony in view of uniform support enforcement laws in effect in both South Carolina and Florida. *See* S.C. Code Ann. § 20-7-1315 *et. seq.* (Supp. 1995) and Fla. Stat. Ann. § 88.011 *et. seq.* (West 1987 & Supp. 1996).

Finally, I disagree with the majority's view that the husband was required to make a Rule 59(e) motion to preserve the issue for review. It seems to me inequitable that the wife, who made little effort to put the husband on notice by her pleadings or her testimony that she was requesting security for the payment of alimony by way of a lien against the husband's retirement, should now be insulated from protest by the husband by a technical application of the rules. In any event, I do not read the case law as requiring a Rule (59(e) motion to preserve the issue for review. It is well settled that

but for a few exceptional situations, "an appellate court cannot address an issue unless it was raised to, and ruled upon by the trial court." *Smith v. Phillips*,— S.C. —, 458 S.E. (2d) 427, 429 (1995). The practical purpose of such a rule is to preclude an appellant from raising for the first time on appeal as error a matter not raised to and considered by the trial court. *Toyota of Florence, Inc. v. Lynch*, 314 S.C. 257, 442 S.E. (2d) 611 (1994). While arguably the husband was required to bring to the attention of the family court by posttrial motion the matter of whether the wife's pleadings requested security for the payment of unaccrued alimony, I do not think the husband is precluded from arguing an abuse of discretion by the court in providing security for the payment of alimony. I would reverse the court's order to the extent it provides security for the payment of future alimony.