THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Kenneth W., Respondent,
 v.
 Gretchen D., Appellant.
 
 
 

Appeal From Richland County
Robert S. Armstrong, Family Court Judge
Unpublished Opinion No. 2009-UP-395
Heard April 22, 2009  Filed July 20, 2009    
AFFIRMED

 
 
 
 John Elliott, of Columbia, for Appellant.
 C. Cantzon Foster, II, of Columbia, for Respondent.
 
 
 

PER CURIAM: Gretchen
 D. (Mother) appeals the family court's
 order terminating her visitation rights with her daughter.  She asserts the
 court erred in several evidentiary rulings.  We affirm.
FACTUAL/PROCEDURAL
 BACKGROUND
Mother and Kenneth
 W. (Father) were divorced by order filed February 4, 2004.  They had one child
 together, Daughter, who was born March 24, 1998.  In the divorce decree, the
 parties agreed Father would have sole custody of Daughter.  Mother was to have supervised
 visitation initially, then unsupervised day-time visitation, and finally
 unsupervised visitation for every other weekend, beginning April 9-11, 2004. 
 In addition, the order set out conditions for visitation that included: no
 sleeping with Daughter, no nudity around Daughter or by Daughter, no bathing
 with Daughter, and put appropriate clothing on Daughter.  The order provided
 Daughter was to continue in therapy with Dr. Samer Touma and the parties were
 to cooperate with Dr. Touma.  
Dr. Touma counseled
 Daughter until he developed concerns about Daughter's relationship with
 Mother.  He referred Daughter to Dr. Elin Berg, who specialized in areas of
 abuse and neglect, which he did not work with at all. Dr. Touma also contacted
 the South Carolina Department of Social Services (DSS) concerning Daughter.  
Because
 Father felt that DSS was not acting quickly enough, his attorney arranged for
 Daughter to meet with Donna Rudd, a counselor with the Family Resource Center,
 on November 4, 2004.  Rudd testified that during the interview, Daughter
 indicated that on more than one occasion while in the shower at the gym, Mother
 made her touch Mother's breasts. 
Daughter
 next saw Dr. Alicia Benedetto with the Assessment and Resource Center (ARC) on
 November 10, 2004.  Daughter was referred to Dr. Benedetto by the Richland
 County Sheriff's Office.  Daughter described the events in the shower similarly
 to what she had related to Rudd.  Dr. Benedetto concluded Daughter had not made
 any substantive disclosure of sexual abuse.  
Although Father caused
 Daughter to miss two scheduled visitations with Mother, Mother was able to have
 Thanksgiving with Daughter and regular visitation resumed after that. 
Father testified
 that on the weekend before Valentine's Day 2005, he picked Daughter up from
 McDonald's after her visitation with Mother.  When they returned to the house,
 Daughter gagged outside and then went into the house, where she vomited. 
 Father and his new wife (Stepmother) drew Daughter a bath.  Once she was in the
 bathtub, Daughter began scrubbing herself vigorously and crying.  Believing
 Daughter had been sexually abused, Father called DSS.  Daughter also reported
 the incident to the guidance counselor at her school.  Daughter disclosed to
 the court in an in camera interview Mother "made her lick the dog's
 private parts and . . . made her allow the dog to lick her private parts." 
Mother strongly
 denied she had sexually abused Daughter. She explained that with the shower incident
 she and Daughter were taking showers in separate stalls after swimming.  She
 stated Daughter pulled aside her shower curtain and reached for Mother's
 breasts.  Mother told her to stop and not do that again and Daughter complied. One
 of Mother's neighbors testified that during the afternoon of the Sunday before
 Valentine's Day, she watched Daughter for Mother so that Mother could work out
 before a date. She stated when Mother picked up Daughter, her hair was wet and
 she was dressed for her date.  Mother testified that after she picked Daughter
 up from the neighbor, they went back to her house for just a little while
 because it was almost time to leave to take Daughter to meet Father.  She
 asserted there was no time for the alleged incident with the dogs to take
 place. 
When Father became
 dissatisfied with the inaction of DSS and the Sheriff's Department, he filed a
 complaint and a motion for pendente lite relief on February 28, 2005 asserting
 Mother's visitation should be suspended pendente lite and permanently due to a
 substantial change in circumstances.  Father alleged that Mother sexually
 abused Daughter with acts involving her dogs.  Father requested an emergency
 hearing and appointment of a guardian ad litem.  In her answer, Mother denied the
 allegations of abuse and asserted a counterclaim seeking sole custody of
 Daughter.  She alleged Father had attempted to sabotage her role as a parent by
 making "incessant reports and allegations of deviant or prurient
 behavior," interrogating the child with highly suggestive questioning, and
 involving counselors and therapists to aid and abet his campaign.  
After an emergency
 hearing, the family court suspended Mother's visitation.  The court appointed
 C. Vance Stricklin as guardian ad litem and ordered the guardian to arrange for
 psychological evaluations of the parties as soon as possible.  
Dr. A.
 Nicholas DePace, the court-appointed psychologist, reported that in both of his
 meetings with Daughter, she demonstrated significant responses consistent with
 being distressed when Mother was the focus of the conversation.  She would
 become tearful and hesitant to discuss Mother.  She became especially tearful
 when discussing the incident with the dogs.  However, when Mother was not the
 subject of the conversation, Daughter appeared very sociable, vibrant,
 energetic, and intelligent.  Dr. DePace noticed some inconsistencies in
 Daughter's reports of the incidents with the dogs, saying different names for
 the dogs involved.  
Because
 Dr. DePace recommended Daughter have another evaluation, Father took Daughter
 to Dr. Cynthia Brown in Asheville, North Carolina.  In addition, Daughter received
 counseling from Dr. Lanette Atkins, who testified as an expert witness in the
 trial.
Mother
 presented two expert witnesses, Dr. Jonathan Gould and Dr. Allison DeFelice,
 who criticized the methods used by the other evaluators and discussed the
 reliability problems that could be caused by multiple evaluations.  
The final hearing
 in this case was held the week of March 26, 2007.   The family court found a
 substantial change in circumstances affecting Daughter had occurred and that
 Mother's visitation should be terminated based on her acting inappropriately
 with Daughter in at least two regards: "(1)[Mother] required [Daughter] to
 touch [Mother's] breasts, and (2) the incident with the dog or dogs."  The
 court noted that despite Mother's defense contending the investigation and
 interviews with Daughter were suggestive and repetitive, no evidence was
 presented Daughter was asked any leading questions about deviant behavior with
 dogs.  Furthermore, the family court held Mother presented no evidence Daughter
 was coached or had been exposed to pornography.  The court ordered each party
 to be responsible for his or her own expert fees and to divide equally the fees
 for Dr. Touma, Dr. DePace, and the guardian.  In addition, the court ordered
 Mother to pay $15,000.00 of Father's attorney's fees.  The court subsequently
 denied Mother's motion to alter or amend.  This appeal followed.  
STANDARD OF REVIEW
In
 appeals from the family court, this court has the authority to find facts in
 accordance with its own view of the preponderance of the evidence.  Wooten
 v. Wooten, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).  This broad scope
 of review does not, however, require us to disregard the findings of the family
 court which saw and heard the witnesses and generally is in a better position
 to determine credibility.  Id.  In a custody dispute, the paramount factor
 is the welfare and best interest of the child.  Fisher v. Miller, 288
 S.C. 576, 578, 344 S.E.2d 149, 150 (1986).  
"The
 admission of evidence is a matter left to the discretion of the trial judge
 and, absent clear abuse, will not be disturbed on appeal."  Carlyle v.
 Tuomey Hosp., 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991).  "In
 order for this court to reverse a case based on the erroneous admission or
 erroneous exclusion of evidence the plaintiff must show error and
 prejudice."  Timmons v. S.C. Tricentennial Comm'n, 254 S.C. 378,
 405, 175 S.E.2d 805, 819 (1970).
LAW/ANALYSIS
A.  Exclusion of
 evidence of acts occurring prior to divorce
Mother
 argues the family court erred in excluding evidence of Father's pattern of
 false accusations of child abuse and involvement of the child in the inquiries
 occurring prior to the parents' divorce.  
Father
 argues this issue is not properly before the court because Mother failed to
 adequately proffer evidence concerning the past allegations that were deemed
 unfounded. "It is well settled that a reviewing court may not consider
 error claimed in the exclusion of testimony unless the record on appeal shows
 fairly what the rejected testimony would have been."  Jamison v. Ford
 Motor Co., 373 S.C. 248, 260, 644 S.E.2d 755, 761 (Ct. App. 2007), cert.
 granted (July 10, 2008).  "However, this rule regarding proffers has
 been relaxed where the appellate court is able [to] determine from the record
 what the testimony was intended to show and that prejudice clearly
 exists."  Id.
On Father's motion in
 limine, the family court ruled that generally the only relevant evidence
 would be anything that occurred after the date of the divorce.  However, the
 court stated it would reconsider its ruling if Mother established evidence of
 events occurring before that time was relevant and encouraged Mother to
 proffer.  
During
 Father's testimony, Mother proffered that she had intended to elicit testimony
 regarding the past reports of abuse by both Father and Mother and Father's
 history of taking Daughter to therapists. Father took his wife and Daughter to
 Tom Frisco around the date of the separation.  Father reported Daughter as
 abused to DSS in August of 2001 and DSS deemed the report unfounded.  Mother
 next reported Daughter as physically abused in October 4, 2001.  Father
 reported Daughter as sexually abused on October 12, 2001.  He twice took
 Daughter to Dr. DeFelice at the ARC in October of 2001 for interviews.  Mother
 reported Daughter and Stepmother's children as abused on April 25, 2003. 
 Father took Daughter to another therapist in 2003.  The court then ordered an
 evaluation of Daughter, after which she saw Dr. Touma between 2003 and 2004.  
At
 the close of Mother's case, she proffered the reports from DSS concerning the
 above allegations.  The reports indicate DSS determined the allegations of
 October 4, 2001 of physical abuse and of October 12, 2001 of sexual abuse by
 Mother were unfounded.  The August 24, 2001 allegation of verbal abuse and
 leaving Daughter unsupervised was originally determined to be founded but was
 later dismissed. 
Here
 the record shows sufficiently what the rejected testimony concerning the prior
 allegations of abuse and Father's history of taking Daughter to therapists
 would have been to allow this court to review the matter.  However, we do not
 believe Mother sufficiently proffered testimony from Dr. DeFelice to support
 her argument on appeal.  Mother asserts in her brief Dr. DeFelice was
 prohibited from testifying about her direct involvement with Daughter and
 Father in the 2001 allegation of sexual abuse.  In her proffered testimony, Dr.
 DeFelice only stated that past allegations of abuse would be relevant to a
 forensic evaluator in rendering an opinion.  Thus, as Mother did not establish what
 Dr. DeFelice would have related, other than the existence of the prior
 allegations, we cannot review whether the family court erred in limiting Dr.
 DeFelice's testimony.  
We
 find even if the family court erred in excluding the evidence, the error was
 not prejudicial.  To warrant reversal based on the admission or exclusion of
 evidence, the complaining party must prove both error and resulting prejudice.  Timmons v. S.C. Tricentennial Comm'n, 254 S.C. 378, 405, 175 S.E.2d 805,
 819 (1970).  Although the family court did not allow testimony of the
 allegations prior to the divorce, the temporary order states, "[T]here
 have been reports to DSS by [Father] concerning [Mother] which were unfounded. 
 I further find that only one of the reports involved a sexual abuse allegation,
 which the minor child denied at that time."  In addition, in describing
 the documents and records he reviewed, Mother's expert, Dr. Gould, listed the
 DSS reports.  Thus, evidence of the past unfounded reports was before the
 family court.  
Mother
 asserts her reason for wanting the evidence admitted:  "The evidence of
 other instances of unsubstantiated allegations made by the father is relevant
 to whether he had a motive to make the allegations, whether his intent was to
 deprive the mother of a relationship with the child, and whether there was a
 pattern of examinations or interviews affecting the child irrespective of
 motive or intent."  The family court admitted other testimony into
 evidence that would similarly support Mother's case.  As to Father's motive and
 his intent to deprive Mother of her relationship with Daughter, Dr. Touma
 testified about the acrimony in the relationship of Father and Mother.  He
 stated "I think these two people hated each other more than they loved
 [Daughter] sometimes . . . ."  He added that their hostility spilled over
 onto Daughter at times.  In addition, the record is replete with evidence of
 the numerous examinations and interviews to which Father took Daughter
 following the divorce.  Mother presented evidence from both Dr. DeFelice and
 Dr. Gould that the numerous interviews could have corrupted Daughter's memory
 and created reliability issues. 
Mother
 also asserts her experts were limited by the ruling.  However, Dr. Benedetto
 testified that even without considering events that had occurred prior to the
 divorce, she could still offer the same conclusions as she had stated in her
 report.  In addition, Dr. Benedetto was allowed to testify that she was
 concerned for Daughter when she learned that Father had taken her for multiple
 interviews and exams because that was not the best practice for a child. 
 Accordingly, Mother suffered no prejudice from the court's ruling as to Dr.
 Benedetto's testimony.  
As
 Mother failed to establish prejudice due to the family court's ruling, we find
 no reversible error on this issue.  
B.  Expert
 testimony concerning Daughter's credibility
Mother
 argues the family court erred by allowing Father's experts to comment on
 whether Daughter was credible or truthful in interviews with them.  
"Generally,
 '[w]hether a witness has qualified as an expert, and whether his opinion is
 admissible on a fact in issue, are matters resting largely in the discretion of
 the trial judge.'"  Altman v. Griffith, 372 S.C. 388, 400, 642
 S.E.2d 619, 625 (Ct. App. 2007) (citing Prince v. Associated Petroleum
 Carriers, 262 S.C. 358, 365, 204 S.E.2d 575, 579 (1974)).  However, an
 expert may not vouch for the credibility of a child sexual abuse victim.  S.C.
 Dep't of Soc. Servs. v. Lisa C., 380 S.C. 406, 414, 669 S.E.2d 647, 651-52
 (Ct. App. 2008) (finding psychologist improperly commented on child's
 credibility by saying child "'had no apparent motivation . . . to have a
 false allegation,'" and gave a "'consistent disclosure'"); see State v. Dawkins, 297 S.C. 386, 393-94, 377 S.E.2d 298, 302 (1989)
 (finding improper therapist indication he believed victim's allegations were
 genuine); State v. Dempsey, 340 S.C. 565, 571, 532 S.E.2d 306, 309 (Ct.
 App. 2000) (finding therapist's testimony children were being truthful in
 ninety-five percent of instances in which sexual abuse was alleged was improper
 vouching for child).
The
 first statement to which Mother objects in her brief was Rudd's testimony that
 Daughter was emphatic that she was telling the truth, and that no one had told
 her what to say.  Mother failed to object to this testimony.  Therefore, her
 objection to this statement is not preserved.  
Mother
 also asserts the family court committed error in allowing Rudd to testify she
 saw no evidence Daughter had been coached, she found Daughter's interview
 compelling, and there were indications of sexual abuse.  Similarly, Mother
 takes issue with portions of Dr. Atkins' testimony.  Dr. Atkins testified without
 objection that one of the ways of determining whether a child is lying is to
 look for inconsistencies, and Daughter had been very consistent.  The family
 court allowed Dr. Atkins to testify, over Mother's objections, that in her
 opinion Daughter had been truthful, had not been coached, and was not
 exaggerating. 
However,
 after this testimony, Father's attorney asked Dr. Atkins whether Daughter could
 have made up the disclosures.  Dr. Atkins responded, without objection,
 "Could she make them up?  Sure.  Do I think she did?  No."  She then
 explained that Daughter's allegations would have been very unusual for a child
 to make up and Daughter's physiological reactions when discussing the incidents
 such as flushing and turning red all over would be difficult for a child to
 make up.  Dr. Atkins also testified without objection that Daughter had post-traumatic
 stress disorder. 
In
 addition, on cross-examination by Mother, Dr. Atkins explained she had not
 interviewed Mother because she thought Daughter's reports were very credible.  On
 cross-examination by the guardian, Dr. Atkins testified without objection it
 was not likely that Daughter would have stated that at one point during the
 incident with the dogs it had felt good if she had been coached.  Dr. Atkins
 also testified without objection she found no evidence Daughter was fabricating
 these stories to gain approval or positive reinforcement from anyone.  
The
 court-appointed psychologist, Dr. DePace, stated in his report Daughter had not
 demonstrated any behavior strongly indicating she was being coached by her
 parents or anyone else.  Similarly, the guardian reported he had not seen any
 signs of coaching on the part of Father.  He noted that even Dr. Benedetto, who
 was convinced sexual abuse had not occurred, did not believe coaching was
 present. 
Rudd
 and Dr. Atkins both commented on Daughter's credibility.  However, their other
 statements admitted without objection, and other witnesses' testimony
 concerning a lack of coaching is cumulative to the improper statements.  Thus
 we find the family court's admission of the improper statements is not
 reversible error.  See S.C. Dep't of Soc. Servs. v. Smith, 343
 S.C. 129, 140, 538 S.E.2d 285, 290-91 (Ct. App. 2000) (stating when evidence is
 merely cumulative to other evidence, its admission is harmless and does not
 constitute reversible error).
C.  In camera interview with Daughter
Mother argues the
 family court deprived her of the opportunity to confront or challenge
 Daughter's statements in any meaningful way by utilizing an in camera interview with Daughter.  She asserts the in camera interview violated her
 due process rights.  
The parties
 discussed Daughter's testimony and the possibility of an in camera interview.  Both Father's and Mother's attorneys stated they preferred to have
 Daughter take the stand and testify but Mother's attorney never asserted an in
 camera interview would be a violation of Mother's due process rights.  Mother's
 attorney suggested questions for the family court judge to ask.  The guardian
 accompanied Daughter and the family court judge to chambers.  After the
 interview, the family court judge reported for the record the conversation he
 had with Daughter.  The family court judge stated he asked Daughter about the
 good and bad times she had with each parent.  He related Daughter indicated
 Mother had made her touch Mother's chest and also disclosed the incident with
 the dogs.  The guardian confirmed the family court's recollection of the
 interview.  
The family
 court judge asked the attorneys if they had anything they wished to put on the
 record as a result of the interview.  Mother's attorney did not offer any
 objections at that time.  Not until her motion for a new trial did Mother
 object to what Daughter told the family court judge in the interview regarding
 the allegations, asserting she was deprived of the opportunity to confront the
 allegations in a meaningful way.  In denying the motion, the family court judge
 found Mother had waived any objection to the interview by failing to object
 after the court recited for the record what was said in the interview and by
 failing to request an opportunity to cross-examine Daughter.  Failure to object
 when evidence is offered constitutes a waiver of the right to object.  Crawford
 v. Crawford, 321 S.C. 511, 514, 469 S.E.2d 622, 624 (Ct. App. 1996).  We
 agree with the family court that Mother waived any arguments concerning the in
 camera interview by failing to make a timely objection.
D.   Testimony of
 Dr. DeFelice
Mother
 argues the family court erred in failing to entertain expert testimony from Dr.
 DeFelice on the likelihood of improper influence on the child's assertions.  

 During
 Dr. DeFelice's testimony, Mother offered the following proffer:
 
 Q. In
 terms of reliability of out-of-court statements made by [Daughter] to others,
 can you say, within a reasonable degree of professional certainty, whether
 [Daughter's] statements, over time, could be considered reliable?
 A. My
 review of the information causes me, personally, as a forensic evaluator, great
 concern about the reliability of her statements at this time in her development
 regarding these allegations from the past.  
 

The family court sustained
 Father's objection to this testimony because Dr. DeFelice had no personal
 knowledge concerning the allegations of this case and had not seen Daughter in
 six years.  Although the court excluded this testimony, it did allow Dr.
 DeFelice to testify how protocols of forensic interviewing of suspected child
 abuse victims were deviated from and the effect of that deviation.  She stated
 these deviations "muddied the waters."  She related children ages
 three to seven are particularly vulnerable and it creates serious issues of
 memory and suggestibility.  She testified:

 Now, it
 is my opinion that there very serious deviations in this case I think the best
 word I can use would be corrupt corrupted the capacity of the child to render
 statements not about just anything but about specific events that she's been
 interviewed about repeatedly and under multiple irregular circumstances. 

In
 addition, she testified on cross-examination by the guardian: "I rendered
 the opinion that there is a protocol or that there are protocols and standards
 for forensic evaluations and that, I believe, that they have not been followed and,
 I believe, as a result that there is the potential reliability problem." 
 The family court allowed this testimony.  
Although
 the family court excluded some testimony from Dr. DeFelice concerning the
 reliability of Daughter's statements, she was allowed to testify that the
 deviations from protocol "corrupted the capacity of the child to render
 statements" and created a "potential reliability problem."  We
 find no significant difference between the testimony the family court allowed
 and the testimony it did not allow.  Accordingly, we find no reversible error.  See Fields v. Reg'l Med. Ctr. Orangeburg, 363 S.C. 19, 31, 609
 S.E.2d 506, 512 (2005) (stating an error in the exclusion of evidence may be
 deemed harmless if the equivalent or cumulative testimony or evidence is
 admitted).  
In addition, Mother
 asserts in this section of her brief that the family court "admitted all
 manner of the child's hearsay statements through other witnesses in the
 father's case."  She fails, however, to call this court's attention to any
 such statements in the record.  We find that if Mother is attempting to argue
 the family court erred in admitting these statements, the argument is not
 properly before this court.  See Rule 208(b)(1)(B), SCACR
 ("Ordinarily, no point will be considered which is not set forth in the statement
 of issues on appeal."); Davis v. Tripp, 338 S.C. 226, 234, 525
 S.E.2d 528, 532 (Ct. App. 1999) (stating appellant has the burden of showing
 both error and prejudice).
E.  Opinion of Dr. Atkins
Mother argues the
 family court erred in allowing Dr. Atkins to testify that in her opinion
 Daughter was the victim of child sexual abuse.  She asserts that because Dr.
 Atkins' assessment of Daughter was one-sided and only presented Father's side
 of the story, Dr. Atkins' testimony was more prejudicial than probative.  Dr.
 Atkins did not personally interview Mother but did read Mother's deposition. 
 Mother's expert, Dr. Gould, testified that when an evaluator has information
 from only one parent, it biases him or her to generate hypotheses only from the
 perspective of that one parent.  Dr. Gould also stated that on the issues of
 judgment and credibility, mental health professionals are no better than the
 general public at being able to identify who is and who is not telling the
 truth. 
Dr.
 Atkins acknowledged that in ideal circumstances, she would have interviewed
 Mother also, but in this case, she relied on records of treating or other
 evaluating professionals.  She asserted that the fact she did not speak with
 Mother was not an impediment to her evaluation.  
In Terwilliger
 v. Terwilliger, the father asserted the family court erred in giving undue
 consideration to the mother's expert witness, a clinical psychologist, who tested
 the child, her grandparents, and the mother but did not test the father or
 communicate with him.  298 S.C. 144, 147, 378 S.E.2d 609, 611 (Ct. App. 1989).  This
 court found the father's argument
 concerned the question of credibility and the probative value to be placed upon
 the testimony of the psychologist.  We held:  "Resolving questions of
 credibility is a function of the family court judge who heard the testimony.  Similarly,
 the fact finder determines the weight to be given testimony."  Id.  (citations
 omitted).  Thus, we concluded the family court did not err in assessing the
 probative value of the psychologist's testimony.  Id.
Here,
 the family court was able to consider Mother's experts' criticism of Dr.
 Atkins' failure to interview Mother as well as Dr. Atkins' explanation that the
 fact she did not speak with Mother was not an impediment to her evaluation.  We
 hold, as we did in Terwilliger, the family court did not abuse its discretion
 in determining the expert's testimony was more probative than prejudicial.  
F.  Exclusion of
 deposition
Mother
 argues the family court erred in refusing to admit the deposition testimony of
 a psychiatrist who examined Daughter and had previously rendered an opinion as
 to whether she was a victim of child sexual abuse.  
Dr.
 Elin Berg was the psychiatrist with whom Daughter counseled following the
 allegations of sexual abuse.  During Dr. Gould's testimony, Mother sought to
 have admitted the following:

 Q. Dr.
 Berg, in your opinion, did the sexual abuse occur?
 A.  I
 don't know.

The
 guardian actually quoted the same language from Dr. Berg's deposition in his
 report.  Accordingly, as we cannot see how Mother was prejudiced by this ruling,
 we need not address whether the trial court erred in excluding the deposition excerpt
 during Dr. Gould's testimony.  See Fields, 363 S.C. at 31, 609
 S.E.2d at 512 (stating an error in the exclusion of evidence may be deemed
 harmless if the equivalent or cumulative testimony or evidence is admitted).  
CONCLUSION
For
 the above stated the reasons, the order of the family court is 
AFFIRMED.
HUFF
 and KONDUROS, JJ., and CURETON, A.J., concur.