677 S.E.2d 616

**Susan Lynn POSNER, Respondent,**

v.

**Daniel A. POSNER, Appellant.**

**No. 4533.**

Court of Appeals of South Carolina.

Heard Feb. 19, 2009.

Decided April 16, 2009.

Rehearing Denied June 1, 2009.

Richard C. Detwiler and Kathleen M. McDaniel, of Columbia, for Appellant.

James T. McLaren and C. Dixon Lee, III, of Columbia, for Respondent.

WILLIAMS, J.

Daniel A. Posner (Husband) appeals the family court's decision that (1) the Marital Settlement Agreement (the Agreement) between Husband and Susan Lynn Posner (Wife) requires that Wife receive her share of Husband's Tax Deferred Savings Plan (the TDSP) plus any growth or loss on the entire account; (2) Husband has not purged himself of contempt from a prior family court order; and (3) Wife is entitled to attorneys' fees and costs. We affirm the family court's holding that Husband remains in contempt and we dismiss the remainder of Husband's appeal under the Fugitive Disentitlement Doctrine (FDD).

## FACTS

Husband and Wife were married in 1984. They have two daughters (the Children), both of whom are now over the age of nineteen. Husband and Wife divorced in 2001. Wife currently resides in South Carolina and Husband resides in Pennsylvania. The Final Divorce Decree approved and incorporated by reference the Agreement. The Agreement provides, among other things, that Husband shall maintain life insurance designating Wife as beneficiary for the benefit of the Children, restore the balance of certain UGMA[1] accounts for the Children, reimburse Wife for health insurance premiums and other medical costs incurred by Wife for the Children, and provide Wife with information or authorization to access information regarding Husband's IBM stock cost basis. The Agreement also provides for the entry of a Qualified Domestic Relations Order (the QDRO) to divide the TDSP, which Husband acquired during his employment with IBM.

The central issues presented in this case stem from two events, both of which relate to the Agreement. The first is the July 20, 2004, family court order finding Husband in contempt for violating the terms of the Agreement (the Contempt Order). Husband failed to appear for the hearing pursuant to the Rule to Show Cause. Wife argues because Husband has failed to purge himself of this contempt, his appeal to this Court should be dismissed under the FDD.[2] The second event is the February 21, 2006, distribution of Husband's TDSP by IBM, which the family court held was in accordance with the terms of the Agreement and the QDRO. Husband argues the family court's interpretation of the Agreement and the QDRO as it related to distribution of the TDSP was erroneous.

### A. The Contempt Order

On July 20, 2004, the family court found Husband in contempt for failing to comply with certain terms of the Agree-

---

1. Uniform Gifts to Minors Act.

2. The Fugitive Disentitlement Doctrine permits a court to "dismiss an appeal by a person who stands in contempt of court in the proceeding in which he seeks to take an appeal." *Scelba v. Scelba,* 342 S.C. 223, 228, 535 S.E.2d 668, 671 (Ct.App.2000).

ment. Specifically, the family court found Husband in contempt, stating Husband failed (a) to maintain life insurance designating Wife as beneficiary for the benefit of the Children, (b) to restore the balance of certain UGMA accounts for the Children, (c) to reimburse Wife for health insurance premiums and other medical costs incurred by Wife for the Children, and (d) to provide Wife with information or authorization to access information regarding Husband's IBM stock cost basis. The family court further ordered a bench warrant be issued directing Husband's arrest and incarceration due to his failure to appear pursuant to the Rule to Show Cause for the hearing. The family court ordered Husband be incarcerated for 90 days, but that he could purge himself of the contempt by complying with the order. A bench warrant was issued for Husband's arrest on July 22, 2004.

Three years later, on March 15, 2007, a hearing was held on Husband's motion requesting the family court reform, interpret, or enforce the QDRO in a manner consistent with the Agreement. At that hearing, Wife argued Husband's motion should be barred under the FDD because Husband had yet to comply with the Contempt Order. Following the hearing, the family court issued an order stating although it had considered Wife's argument concerning the FDD, the family court nevertheless determined it "would be best for it to address the merits of [Husband's] Motion." The family court went on to find that Husband had failed to purge himself of his contempt under the Contempt Order. The court held, "Much of the same documentation presented at [the] hearing was also presented earlier to Judge Riddle and was found to be inaccurate, non-complying and otherwise insufficient to serve to purge [Husband] of the prior contempt sentences." Husband did not appear at this hearing. The July 22, 2004 bench warrant is still outstanding.

## B. Distribution of the TDSP

The QDRO was issued and filed in January 2006. On February 21, 2006, IBM distributed the TDSP by transferring $203,590.12 to Wife and $135,349.10 to Husband. Thereafter, Husband filed a motion in family court requesting that the court reform, interpret, or enforce the QDRO in a manner consistent with the Agreement. Wife, in turn, submitted an

amended return, answer and counterclaim to Husband's motion in which she asserted IBM had interpreted the QDRO correctly in its distribution and alleged Husband had not purged himself of the family court's finding of civil contempt almost three years earlier.

The family court held Husband and Wife received their proper distribution under the QDRO and that, contrary to Husband's contentions, Wife was not overpaid. The family court also awarded Wife $5,000 in attorneys' fees and costs. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005). However, this broad scope of review does not require this Court to disregard the family court's findings. *Lacke v. Lacke*, 362 S.C. 302, 307, 608 S.E.2d 147, 149–50 (Ct.App.2005). Nor must we ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Scott v. Scott*, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003). However, our broad scope of review does not relieve the appellant of the burden of convincing this Court that the family court committed error. *Nasser–Moghaddassi*, 364 S.C. at 190, 612 S.E.2d at 711.

## LAW & ANALYSIS

### A. Husband's Contempt

Husband argues he has performed the acts specified in the Contempt Order, thereby purging his contempt and, therefore, it was error for the family court to find that he remains in contempt. In contrast, Wife argues the family court properly held that Husband remains in contempt and, therefore, his appeal should be dismissed under the FDD. We must, therefore, first determine whether the family court erred in holding Husband has failed to purge himself of contempt. We hold it did not.

On appeal, a decision regarding contempt should be reversed only if it is without evidentiary support or the family court has abused its discretion. *Lukich v. Lukich,* 368 S.C. 47, 56, 627 S.E.2d 754, 759 (Ct.App.2006). The purpose of holding an individual in civil contempt is "to coerce that individual to do the thing required by the order for the benefit of the complainant." *Miller v. Miller,* 375 S.C. 443, 456, 652 S.E.2d 754, 761 (Ct.App.2007) (citing *Floyd v. Floyd,* 365 S.C. 56, 75, 615 S.E.2d 465, 475 (Ct.App.2005)). "In civil contempt cases, the sanctions are conditioned on compliance with the court's order.... [T]he contemnor can end the sentence and discharge himself at any moment by doing what he had previously refused to do." *Id.* at 457, 652 S.E.2d at 761.

Here, the Contempt Order found Husband in contempt on several grounds, among which was his failure to replenish the UGMA accounts for the Children. Further, he failed to appear before the family court pursuant to a Rule to Show Cause, resulting in a bench warrant being issued for his arrest.

### i. UGMA Accounts

The Contempt Order stated Husband could purge his contempt as to the UGMA accounts by providing written proof that he redeposited $24,588, plus 8% interest, from July 30, 1998, until the date of the redeposit within the time limits specified by the Agreement.

As proof that he replenished the UGMA accounts, Husband points to two exhibits in the record. The first is a July 28, 2004 letter from Husband's then attorney to Wife's attorney purporting to show a breakdown of the UGMA account from July to December 2001, as well as all of 2002 and 2003. However, this letter states that the "[t]otal deposited" on the account during this period was only $7,953.09, not $24,588 as was required by the Contempt Order. The letter also references an "enclosed" account summary, but we find no such summary in the record. The second is a plain piece of paper entitled "Rationalization of [A]ccount Transactions for UGMA." This paper purports to show that Husband has redeposited $24,372.86 to the UGMA account. However, this document does not indicate who created it, when it was created, or for what purpose. Furthermore, there is no documentation in the record from the UGMA account to

corroborate deposits claimed by Husband. Taken together, we do not find these exhibits serve as sufficient written proof that Husband has complied with the provisions of the Contempt Order dealing with the UGMA accounts. At best, they provide conflicting evidence as to exactly how much Husband has redeposited.

The family court also found the other documentation Husband submitted as proof that he had complied with the Contempt Order to be insufficient. After review of this evidence, we find no abuse of discretion in the family court's conclusion as to Husband's non-compliance.

### ii. Bench Warrant

The Contempt Order also stated Husband was in contempt for his willful failure to appear before the family court as required by the Rule to Show Cause and a bench warrant was to be issued for Husband's arrest. This sanction was reserved until Husband appeared before the family court pursuant to the bench warrant. Husband has yet to appear before the family court to be sentenced for his prior failure to appear.

### B. The FDD

Because we find Husband has failed to purge himself of contempt, we must next determine whether the FDD can be applied to dismiss his case.

The FDD is a discretionary right of an appellate court to "dismiss an appeal by a person who stands in contempt of court in the proceeding in which he seeks to take an appeal." *See Scelba,* 342 S.C. at 228, 535 S.E.2d at 671 (describing the doctrine as an inherent power of the court "to ignore the demands of litigants who persist in defying the legal orders and processes"). This power of the court has long been recognized by the United States Supreme Court. *Ortega–Rodriguez v. United States,* 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). The rationales for this doctrine include: (1) the difficulty of enforcement against one not willing to subject himself to the court's authority, (2) the inequity of allowing the "fugitive" to use the resources of the courts only if the outcome is an aid to him, (3) the need to avoid prejudice to the non-fugitive party, and (4) the discouragement of flights from justice. *Scelba,* 342 S.C. at 228–29,

535 S.E.2d at 671. For an appellate court to invoke the FDD to dismiss an appeal, two requirements must be met: (1) the appellant must be a fugitive; and (2) there must be a connection between the appellant's fugitive status and the appellate process the appellant seeks to utilize. *Id.*

In *Scelba,* this Court applied the FDD to dismiss the appeal of a wife due to her "flagrant disregard of prior orders in [the] litigation." *Id.* at 232, 535 S.E.2d at 673. In that case, the husband moved for a divorce on the ground of adultery. *Id.* at 226, 535 S.E.2d at 670. At a temporary hearing, the family court ordered the parties to account to each other for all property and ordered the wife to surrender certain items and pay the husband's attorney's fees. *Id.* The wife refused to allow her husband to enter the family home to inventory and appraise the property, so the husband requested a Rule to Show Cause against the wife. *Id.* The wife refused to attend the hearing and was held in contempt. *Id.* at 227, 535 S.E.2d at 670. In its final order, the family court granted the divorce, divided the marital property, and ordered the wife to pay the husband's attorney's fees. *Id.* at 227–28, 535 S.E.2d at 671. The wife appealed all three issues. *Id.* This Court dismissed the wife's appeal under the FDD because the wife had been found in contempt for failing to appear at a rule to show cause hearing, failing to appear at a scheduled deposition, and failing to appear at a final hearing for fear of being arrested on the bench warrant. *Id.* at 229, 535 S.E.2d at 671–72.

We find that here, as in *Scelba,* the requirements of the FDD are met. First, Husband is a fugitive in this litigation. The family court found Husband in contempt for failing to comply with a number of provisions in the Agreement. Moreover, since the issuance of the bench warrant by the family court, Husband has yet to appear before that court. As such, "matters giving rise to the bench warrant have not been adjudicated because of [Husband's] refusal to submit to the family court's jurisdiction." *Id.* at 229, 535 S.E.2d at 672.

Second, there exists a sufficient nexus between Husband's fugitive status and the appellate process he seeks to utilize. In *Huskey v. Huskey,* this Court found a sufficient nexus existed and thus refused to hear a husband's appeal of an equitable division of marital property. 284 S.C. 504, 505, 327

S.E.2d 359, 360 (Ct.App.1985). In that case, the husband absconded from the family court's jurisdiction to avoid arrest for failure to appear in connection with a contempt proceeding arising from the divorce but concerning matters outside the property division. *Id.*

Here, the nexus is even stronger than in *Huskey*. Husband's fugitive status derives from not only his failure to appear before the family court pursuant to the Rule to Show Cause resulting in a bench warrant being issued for his arrest, but also his failure to comply with the provisions of the Agreement itself. On appeal, Husband asks this Court to interpret the Agreement in a manner more favorable to him than the family court's interpretation. Husband has failed to abide by the court order which approves the Agreement, absented himself from the jurisdiction, and evaded the processes of the court. In short, his conduct frustrates the administration of justice. We hold that under the FDD Husband may not use the resources of this Court in this manner. *See Scelba*, 342 S.C. at 229, 535 S.E.2d at 671 (holding one of the rationales behind the FDD is to prevent an appellant from "us[ing] the resources of the courts only if the outcome is an aid to him").

## CONCLUSION

Accordingly, Husband's appeal is
**DISMISSED.**

PIEPER and GEATHERS, JJ., concur.