THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Catherine Panas, Respondent,
 v.
 Richard Panas and Gallina Fielder, Defendants,
 of whom Richard Panas is the Appellant.
 
 
 

Appeal From York County
Henry T. Woods, Family Court Judge
Unpublished Opinion No. 2010-UP-534
Submitted December 8, 2010  Filed December 14, 2010
DISMISSED

 
 
 
 Brian Scott McCoy, of Rock Hill, for Appellant.
 Lucy London McDow and Tony Miller Jones, both of Rock Hill,
 for Respondent.
 
 
 

FEW,
 C.J.: Richard Panas, while currently in contempt for failing to comply with
 a divorce decree and subsequent consent order, appeals the divorce decree.  We
 dismiss the appeal under the fugitive disentitlement doctrine. [1]
I.  Facts
Catherine Evrard and Richard Panas married on June 18, 1994.   After the birth of their
 first child in May 1995, Panas told Evrard he used crack cocaine.  Evrard
 testified their marriage began to change when Panas opened a list broker
 business and a printing company and he spent less time with his family.  As a
 list broker, Panas purchased lists of names and addresses.  He then sent to the
 people on the lists a sweepstake offering them a chance to win if they first responded
 by sending money.  He kept the money, generated his own lists of the responding
 people, and sold those lists.  Panas owned six companies, at least three of
 which participated in the list broker business.  
Panas
 physically abused Evrard and had an affair with a woman named Gallina Fielder.[2] 
 In addition, he was convicted of drug possession and criminal domestic
 violence.  
Evrard filed
 for divorce on January 27, 2003.  A temporary consent order filed on July 21,
 2003 granted Evrard temporary custody of the children with visitation rights to
 Panas.  The order also granted Evrard temporary possession of the marital home
 and required Panas to pay $4,000 in monthly support and tuition for the
 children's private education.  
Evrard filed
 four motions to compel discovery responses and a complete financial declaration
 from Panas between January 28, 2004 and January 9, 2006.  Due to Panas's repeated failure to provide complete financial information to Evrard, the court twice
 refused to allow his CPA to testify about certain topics.  First, on June 15, 2006, the court denied Panas's motion for modification of temporary child support,
 based on an alleged decrease in his income, after the judge refused to allow
 testimony from his CPA concerning the alleged income reduction.  Second, at the
 divorce hearing on September 18, 2007, the trial judge again refused to let
 Panas's CPA testify as to valuations of some of his businesses "due to the
 failure on the part of the Husband to produce that documentation."  Additionally,
 between 2005 and the present Panas has retained three different attorneys and,
 at times, appeared pro se.  
The divorce
 decree was issued on July 2, 2008.  It awarded to Evrard custody, alimony in
 the amount of $7,500 per month, child support in the amount of $4,000 per
 month, the marital home, and $2,062,872 to be paid from the remainder of six
 marital properties.  The decree further stated if Panas did not pay, Evrard 

 shall
 be authorized to sell whatever property of the Husband that can be located
 within this State or any other State upon proper application to satisfy this
 judgment.  The Clerk of Court shall be authorized to execute whatever deeds
 and/or documentation necessary to convey title of the Husband's properties to
 the Wife for purposes of sale.

Panas appealed, alleging
 error in the family court's award of alimony and child support, and the
 valuation of his businesses and marital property.  
By September
 2008 Panas had not conveyed the marital home or paid the amounts due to Evrard.[3] 
 Evrard made a motion for conveyance of the marital home and other properties to
 satisfy the arrearages.  The parties resolved the dispute in an agreement which
 was approved by consent order on November 3, 2008.  The agreement required
 Panas to sell four properties and apply the proceeds to his delinquent child
 support, alimony, attorney and guardian ad litem fees, and equitable
 apportionment.  It also required Panas to transfer the marital home
 "promptly."  
On June 3,
 2009, Evrard filed a rule to show cause why Panas had not paid child support or
 alimony since November 3, 2008, transferred the marital home to Evrard, or sold
 the four properties as required by the consent order.  On August 25, 2009, the
 family court issued an order finding Panas in contempt of court based on his
 noncompliance with both the divorce decree and consent order.[4] 
 As punishment for his contempt, the family court ordered Panas to spend ninety
 days in the York County Detention or Public Works Center and could purge his contempt
 by paying the $69,000 in arrearages of child support and alimony by September
 3, 2009.  Further, the order specified:

 [T]he
 parties may, by mutual written agreement, extend the time for the defendant to
 purge himself of contempt for an additional thirty days, if the defendant has
 identified to the plaintiff property of sufficient value and liquidity,
 satisfactory to the plaintiff, that defendant proposes to promptly transfer to
 the plaintiff or liquidate, and then promptly transfers or liquidates, in order
 to satisfy the defendant's support arrearage.  Such property does not include
 real or personal property which the plaintiff is already entitled to receive
 under the Decree or the Consent Order or as a result of the defendant's failure
 to comply with either order.

The order also required
 the clerk of court to transfer the marital home to Evrard.  
On August 13,
 2009, Evrard filed a "Motion to Dismiss or For Remand" with this
 court based on the fugitive disentitlement doctrine.  In his response, Panas
 stated he intended to purge himself.  This court denied the motion on September
 16, 2009.  Panas failed to purge himself and a bench warrant for his arrest was
 issued on December 2, 2009.  
To date, Panas has
 not complied with the contempt order.  The bench warrant is active and remains
 unserved because Panas's whereabouts are unknown to the court.  However, Panas
 "has offered to sign over his interest in three rental properties
 (referenced in the Divorce Decree) to the Respondent.  . . . [and] contends
 that the equity in said properties exceeds the amount required under the
 contempt order, and should be considered compliance."  
II.  Fugitive
 Disentitlement Doctrine
The fugitive
 disentitlement doctrine "is a discretionary right of an appellate court to
 'dismiss an appeal by a person who stands in contempt of court in the
 proceeding in which he seeks to take an appeal.'"  Posner v. Posner,
 383 S.C. 26, 33, 677 S.E.2d 616, 620 (Ct. App. 2009) (quoting Scelba v.
 Scelba, 342 S.C. 223, 228, 535 S.E.2d 668, 671 (Ct. App. 2000)).  It is a
 discretionary right and inherent power of the court which "has long been
 recognized by the United States Supreme Court."  Scelba, 342 S.C.
 at 228, 535 S.E.2d at 671 (citing Ortega-Rodriguez v. United States, 507
 U.S. 234, 244 (1993)).  For an appellate court to invoke the doctrine as the
 basis for dismissing an appeal, "two prerequisites must be met: (1) the
 appellant must be a fugitive; and (2) there must be a connection between the
 fugitive status and the appellate process the appellant seeks to
 utilize."  Id. at 229, 535 S.E.2d at 671.  The policy behind and
 rationales for the doctrine are: "'[1] the difficulty of enforcement
 against one not willing to subject himself to the court's
 authority, [2] the inequity of allowing that 'fugitive' to use the resources of
 the courts only if the outcome is an aid to him, [3] the need to avoid prejudice
 to the nonfugitive party, and [4] the discouragement of flights from justice.'"  Id. at 228-29, 535 S.E.2d at 671 (quoting United States v. Barnette,
 129 F.3d 1179, 1183 (11th Cir. 1997)).
This court has
 dismissed two cases with published opinions based on the fugitive
 disentitlement doctrine which provide clarification of its two requirements.
First, in Scelba,
 this court dismissed an appeal based on the doctrine where the appellant wife
 failed to appear on two occasions.  Id. at 229, 535 S.E.2d at 671-72. 
 First, she did not appear at a rule to show cause hearing after she refused to
 let her husband come to the family home to take a property inventory.  Id. at 226-27, 535 S.E.2d at 670.  Second, after the issuance of a bench warrant
 due to the first failure to appear, the wife again did not appear at a
 deposition.  Id. at 227, 535 S.E.2d at 670.  Then, because she was
 afraid she would be arrested, the wife did not appear at the final hearing, but
 then appealed the ground for the divorce, allocation of marital property,
 valuation of pension plans, and award of attorney fees.  Id. at 227, 535
 S.E.2d at 670-71.  This court found that the first requirement was met because
 "[w]ithout question, the wife, by her own actions, has become a fugitive
 in this litigation" and "the matters giving rise to the bench warrant
 have not been adjudicated because of the wife's refusal to submit to the family
 court's jurisdiction."  Id. at 229, 535 S.E.2d at 671-72.  The
 second requirement was met because:

 The
 Husband's attempts to secure the Wife's compliance with the Court's Temporary
 Order and be able to inventory and appraise all furnishings were frustrated by
 the Wife. . . .  To effectuate the property division, the family court granted the husband a
 judgment against the wife . . . and ordered the wife to transfer certain assets
 to the husband . . . .  Nevertheless, as long as the wife refuses to submit to
 the jurisdiction of the family court and to otherwise disclose her whereabouts,
 the husband has no practical means of enforcing the final divorce decree,
 whether that enforcement involves compelling the transfer of certain assets or
 executing a judgment.

Id. at 230-31, 535
 S.E.2d at 672.  Because both requirements for application of the doctrine were
 satisfied, the appeal was dismissed.
This court
 again applied the doctrine to a divorce case in Posner, where the
 husband was found to be in contempt for failing to comply with certain terms of
 a marital agreement and a bench warrant was issued for his arrest after he
 failed to appear pursuant to a rule to show cause.  383 S.C. at 29-30, 677
 S.E.2d at 618.  The marital agreement provided that the wife receive a share of
 the husband's tax deferred savings plan.  Id. at 29, 677 S.E.2d at 618. 
 Three years later, the husband made a motion requesting the family court to
 reduce the amount given to the wife, alleging she was overpaid.  Id. at
 30-31, 677 S.E.2d at 619.  The family court denied the motion and found that
 the wife received a proper distribution.  Id. at 31, 677 S.E.2d at 619. 
 When the husband appealed, the wife argued it should be dismissed based on the
 fugitive disentitlement doctrine.  Id. at 29, 677 S.E.2d at 618.  
After
 determining that the husband failed to purge himself of contempt, this court applied
 the doctrine.  Id. at 33, 677 S.E.2d at 620.  The first requirement was
 met because "[t]he family court found Husband in contempt for failing to
 comply with a number of provisions in the Agreement.  Moreover, since the
 issuance of the bench warrant by the family court, Husband has yet to appear
 before that court."  Id. at 34, 677 S.E.2d at 621.  The second
 requirement for application of the doctrine was also met because 

 Husband's
 fugitive status derives from not only his failure to appear before the family
 court pursuant to the Rule to Show Cause resulting in a bench warrant being
 issued for his arrest, but also his failure to comply with the provisions of
 the Agreement itself. On appeal, Husband asks this Court to interpret the
 Agreement in a manner more favorable to him than the family court's
 interpretation. Husband has failed to abide by the court order which approves
 the Agreement, absented himself from the jurisdiction, and evaded the processes
 of the court. In short, his conduct frustrates the administration of justice. 
 

Id. at 35, 677
 S.E.2d at 621.  Accordingly, the appeal was dismissed.  Id.  
In this case,
 both requirements of the doctrine are also met.  First, Panas is a fugitive. 
 He has not been seen in the family court since the final divorce hearing in
 September 2007.  Panas still has neither complied with the divorce decree or
 consent order nor purged himself of his contempt.  Furthermore, due to his
 absence, the bench warrant issued for his arrest remains unserved.  As in Scelba and Posner, the appellant remains absent from the litigation and the
 matters giving rise to the bench warrant have not been resolved because of
 Panas's refusal to comply with court orders.
Second, there
 is a connection between the fugitive status and the appellate process Panas
 seeks to utilize.  The contempt order arises from Panas's refusal to pay
 alimony and child support and to comply with the consent order which required
 him to sell rental properties and transfer the proceeds to Evrard.  As in Scelba,
 as long as Panas refuses to comply with the court's order and disclose his
 whereabouts, Evrard has no practical means of enforcing either the divorce
 decree or the consent order.  
Originally, the
 divorce decree allowed Panas to keep the rental properties, but authorized the
 clerk of court to transfer them to Evrard if Panas did not timely pay her the
 amounts due.  The consent order, which Panas agreed to, then required him to
 sell four of the properties and transfer the proceeds to Evrard.  Finally, the
 contempt order required Panas to pay all arrearages, but allowed him to
 identify property to satisfy them if Evrard agreed.  If Panas chose to identify
 property as satisfaction, it could not be property Evrard was already entitled
 to receive under either the divorce decree or consent order, and he was
 required to "promptly transfer" such property to her.  Panas argues this
 court should not apply the doctrine because he "has offered to sign over
 his interest in three rental properties . . . the equity in said properties
 exceeds the amount required under the contempt order, and should be considered
 compliance."  We disagree.  Because any property Panas chose to identify
 to purge himself of contempt could not be property to which Evrard was already
 entitled, his offer of the rental properties is not compliance.  Furthermore, to
 seek the aid of this court by appeal, Panas must actually purge himself of
 contempt, rather than merely offering compliance.
DISMISSED.
SHORT and
 WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Panas transferred marital property to Fielder during the pendency of the
 divorce.  She was added as a party, but failed to answer or appear. 
[3] These matters were not stayed by Panas's appeal to this court.  Rule 241(b),
 SCACR.
[4] Panas did not appeal the contempt order.