# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Bradley Weller, Appellant,

v.

Gail Weller, Respondent.

Appellate Case No. 2018-000809

_____

Appeal From Darlington County
Cely Anne Brigman, Family Court Judge

_____

Opinion No. 5847
Heard December 8, 2020 – Filed August 18, 2021

_____

**AFFIRMED**

_____

Everett Guy Ballenger, of Barth, Ballenger & Lewis, LLP, of Florence; Allen Mattison Bogan, of Columbia, and Miles Edward Coleman, of Grenville, both of Nelson Mullins Riley & Scarborough, LLP, all for Appellant.

Nancy H. Bailey, of Law Office of Nancy H. Bailey, of Florence; and Marian Dawn Nettles, of Nettles Turbeville & Reddeck, of Lake City, both for Respondent.

_____

**WILLIAMS, J.:** In this family matter, Bradley Weller (Husband) appeals the family court's order denying his request to terminate or modify alimony. Husband argues the court erred in (1) finding he did not show a substantial change in circumstances justifying termination or modification of alimony, (2) relying on

inadmissible and irrelevant facts in making its determination, and (3) awarding Gail Weller (Wife) attorney's fees.  We affirm.

**FACTS/PROCEDURAL HISTORY**

Husband and Wife married on December 27, 1989, and they had two daughters. On January 21, 2004, after fifteen years of marriage, the family court granted the parties a divorce on the ground of one year's continuous separation.

In the family court's order (2004 Decree), the court approved and adopted the parties' written property and separation agreement (Agreement) "in each and every particular."  Under the Agreement, Wife had sole custody of the parties' two daughters; Husband received visitation; Husband agreed to pay Wife $1,500 per month in child support; and Wife was entitled to twenty-five percent of Husband's annual bonus, up to a total of $10,000.00 each year.[1]  The Agreement also provided Husband would pay Wife $2,000 each month in permanent periodic alimony and $400 per month in rehabilitative alimony for eighteen months.

Husband and Wife also submitted financial declarations to the court.  Wife's 2004 financial declaration stated she had a monthly gross income of $2,120 and had $6,665.99 in monthly expenses.  Wife's monthly gross income included her salary from teaching part-time and working at a local coffee shop part-time.  Husband's 2004 financial declaration stated his monthly gross income was $13,080 and his monthly expenses were $4,683.50.

In its 2004 Decree, the family court stated Husband's $2,000 alimony obligation under the Agreement was predicated on Wife's income being $281 per month—the amount she earned each month working at the coffee shop—rather than the $2,120 she reported as her gross monthly income.  According to the parties' testimony and the 2004 Decree, Wife's employment as a substitute teacher was only supposed to last a few months after the divorce.  The 2004 Decree stated the following pertinent language:

---

[1] Of this twenty-five percent, sixty percent was deemed alimony, and forty percent was deemed child support, both terminating upon the conclusion of Husband's respective obligations.

> [W]ife's financial declaration reflects that she earns
> $2,180.00 per month.[2] However, it was announced that
> the Agreement of the parties was based on the wife's
> income of $281.00 per month . . . . **The wife's monthly**
> **income and basis of the terms of this Agreement for**
> **any future actions between the husband and wife**
> **regarding the wife's income is income of $281.00 per**
> **month and no other income, or projected income**.

(emphasis added). On June 19, 2017, Husband filed a summons and complaint alleging a change in Wife's circumstances and seeking termination or a reduction of alimony. Husband's primary argument was that Wife was now employed full-time as a teacher and that her income substantially exceeded $281 per month.

On January 23, 2018, at the final hearing, Wife testified regarding her education and employment history. At the time the parties met, Wife was in school studying to obtain her Master's degree. She never achieved this degree because the parties married and Husband's employment relocated the family to Tacoma, Washington. At the time of this transfer, Wife was pregnant with the parties' first child, and she and Husband decided she would no longer work. Both parties testified Wife did not work during their fifteen-year marriage until after they separated. During the marriage, Husband's job relocated the family from Tacoma, Washington to Hartsville, South Carolina and then to the country of Belgium. Shortly after relocating to Belgium, Husband entered into an extramarital affair with a coworker and requested Wife and the children return to the United States.

Regarding her employment, Wife explained that she was approached about teaching at a college but was unqualified because she did not have her Master's degree. Back in Hartsville, Wife worked part-time at Trinity Collegiate School when the parties divorced, but her job eventually turned into full-time employment in 2006. She earned roughly $28,000 that year. Wife's salary increased annually, reaching approximately $37,000 in 2015. In 2016, Wife moved to Denver, Colorado, to be closer to a daughter from a previous marriage. In Denver, Wife worked as a full-time teacher at Saint Elizabeth's School, and her salary at the time of the final hearing was approximately $28,000.[3] Wife testified "it would[ not] be

---

[2] Wife reported $2,120 as her income in her 2004 financial declaration; the Agreement's reference to $2180 is a clerical error.
[3] Wife's employment agreement with St. Elizabeth's School stated she could earn $36,400 under a twelve-month teaching contract. She was guaranteed $28,000 for

easy" to maintain her standard of living if alimony were terminated or decreased, "but it could be done."  Moreover, Wife introduced evidence of Husband's extramarital affair and the family's several relocations due to Husband's job.  Wife also sought to introduce a letter Husband wrote to his paramour.  Husband's paramour sent the letter, along with a picture of herself with Husband, to Wife, gloating over the parties' divorce.  The family court admitted the letter over Husband's objection.

The parties also filed updated financial declarations at the final hearing.  In his 2018 financial declaration, Husband reported a monthly gross income of $21,770.69, and Wife reported a monthly gross income of $3,987.83, excluding her alimony.  Wife's gross monthly income included $2,333.33 in wages, $187.50 in overtime and bonuses, and $1,467 in pension disbursements from Husband's pension.[4]  The 2018 declarations also reported Husband had monthly expenses of $19,500.42 and Wife had monthly expenses of $4,962.80.  Wife further reported that she had $9,000 in a personal savings account, $47,120.24 in a voluntary retirement account, and $74,791 of equity in real property.

In its final order (2018 Order), the family court found Husband failed to show Wife's circumstances had changed substantially or materially to warrant termination or a reduction of alimony.  The family court specifically found the parties contemplated that Wife would return to full-time employment "because she . . . was employed at the time of the [2004 Decree]."  The family court also awarded Wife $3,000 in attorney's fees.  Husband filed a motion to alter or amend the judgment pursuant to Rules 52, 59(e), and 60, SCRCP, which the family court denied.  This appeal followed.

**ISSUES ON APPEAL**

---

teaching fifth and eighth grade English.  The remainder could be earned hourly through working in the school's extended day program.

[4] In his motion to alter or amend the judgment, Husband conceded that Wife's receipt of a portion of his pension benefits was contemplated in the Agreement.  The Agreement states in pertinent part, "An appropriate Qualified Domestic Relation Order shall be issued which grants wife [fifty percent] ownership of [Husband's] retirement existing at the date of the filing of this lawsuit . . . through his employer."

I. Did the family court err in finding Husband failed to show a substantial or material change in Wife's circumstances that justified terminating or modifying alimony?

II. Did the family court err in admitting evidence of Husband's extramarital affair, the family's several relocations, and Husband's letter to his paramour?

III. Did the family court err in awarding Wife attorney's fees?

**STANDARD OF REVIEW**

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). On appeal from the family court, this court reviews factual and legal issues de novo, with the exceptions of evidentiary and procedural rulings. *See Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019); *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 596, 813 S.E.2d 486, 486 n.2, 487 (2018) (per curiam). Therefore, this court may find facts in accordance with its own view of the preponderance of the evidence. *Posner v. Posner*, 383 S.C. 26, 31, 677 S.E.2d 616, 619 (Ct. App. 2009). However, this broad scope of review does not prevent this court from recognizing the family court's superior position to evaluate witness credibility and assign comparative weight to testimony. *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655. The appellant maintains the burden of convincing the appellate court that the family court's findings were made in error or were unsubstantiated by the evidence. *Posner*, 383 S.C. at 31, 677 S.E.2d at 619.

Evidentiary and procedural rulings are reviewed for an abuse of discretion. *Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2. "An abuse of discretion occurs when the family court's decision is controlled by some error of law or whe[n] the order, based upon findings of fact, is without evidentiary support." *Gartside v. Gartside*, 383 S.C. 35, 42, 677 S.E.2d 621, 625 (Ct. App. 2009).

**LAW/ANALYSIS**

**I.      Alimony Termination/Modification**

Husband asserts the family court erred in failing to terminate or reduce alimony. Specifically, Husband contends Wife's income substantially exceeds the stipulated income of $281 imputed to wife for any future actions between the parties based on the Agreement. We disagree.

The purpose of alimony is to place the supported spouse in the same position he or she enjoyed during the marriage. *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001). Permanent, periodic alimony is a substitute for support that is normally incidental to marriage. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988). However, alimony is subject to termination or modification upon a showing of changed circumstances. S.C. Code Ann. § 20-3-170 (2014); *Miles v. Miles*, 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct. App. 2003). To justify termination or modification of a spouse's alimony, the change in circumstances must be substantial or material. *Miles*, 355 S.C. at 519, 586 S.E.2d at 140. Additionally, the change must be unanticipated. *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009). "Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse." *Miles*, 355 S.C. at 519, 586 S.E.2d at 40. "[T]he burden to prove entitlement to a modification [alimony] is a substantial one, the same burden applies whether the family court order in question emanated from an order following a contested hearing or a hearing to approve an agreement." *Miles v. Miles*, 393 S.C. 111, 121–22, 711 S.E.2d 880, 885 (2011).

Based on the parties' 2004 stipulation that Wife's income was $281 at that time and for all future actions, Wife has recognized an increase in income since the parties' divorce. This stipulation, however, is one consideration to weigh in this appeal and is not dispositive in our analysis. In determining whether a substantial and material change has occurred justifying the termination or modification of alimony, the appropriate focus is on the totality of Wife's and Husband's circumstances both at the time of their divorce and at the time of filing for termination or modification. *See Bailey v. Bailey*, 269 S.C. 1, 4, 235 S.E.2d 801, 802 (1977) (stating the determination of alimony envelops all circumstances surrounding the case, including the financial condition of the supporting spouse and the need of the supported spouse); *Miles*, 355 S.C. at 519, 586 S.E.2d at 40 (finding the considerations relevant for the initial determination of alimony also relevant in the modification context). The totality of the circumstances include, but are not limited to, the payee's need for and the payor's ability to pay the current alimony. *See Pendergast v. Pendergast*, 354 S.C. 32, 38-39, 579 S.E.2d 530, 533 (Ct. App. 2003) (explaining when a mother's standard of living and income has remained unchanged and the father's income and ability to pay have substantially increased, a substantial change in circumstances does not exist justifying modification of alimony); *Johnson v. Johnson*, 296 S.C. 289, 302, 372 S.E.2d 107, 114 (Ct. App. 1988) (finding when a great disparity in the financial resources and earning

capacities of the parties exists, the payor has the financial ability to meet his own needs while supporting the payee at the standard of living she enjoyed during the marriage, and the payee cannot sustain her marital standard of living on her own income at the end of a rehabilitative period, permanent and periodic alimony is mandated).

In the present case, the parties' 2004 stipulation of $281 as Wife's income does not provide a complete portrayal of Wife's 2004 financial circumstances or accurately reflect her pecuniary needs considered by the court at that time. After the parties' divorce, Wife continued to teach part-time, with her employment eventually evolving into a full-time position. Wife worked two jobs at the time of the divorce in addition to receiving child support and alimony to maintain financial stability. She continues to work full-time to support a financially stable lifestyle; one similar to her lifestyle at the time of the parties' divorce. Wife's overall standard of living has remained relatively constant since 2004, even after considering the income she has recognized over her stipulated income of $281. This increase in income, when compared to Wife's current circumstances, is insufficient to justify a modification or termination of alimony. *See Allen*, 347 S.C. at 184, 554 S.E.2d at 424 ("[A]limony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."); *see also Bailey*, 269 S.C. at 4, 235 S.E.2d at 802 (stating the determination of alimony envelops all circumstances surrounding the case).

Moving to Wife's circumstances, her 2004 expenses were $6,665.99 and her 2018 expenses were $4,962.80—a decrease of roughly $1,700 per month. Wife's decrease in expenses correlates with her loss of child support following the emancipation of the parties' daughters. The only items that were new or increased on Wife's 2018 Financial Declaration were expenses associated with her new home mortgage in Denver, an auto loan, incidentals, veterinary care for pets, cable, personal retirement contributions of $300 that are not associated with her employer, health prescriptions, a storage unit, and credit card payments. Although Wife saves $300 each month in a private retirement account, this sum is offset monthly by expenses related to her new home.

Comparing Wife's 2004 monthly income of approximately $5,620[5] to her 2018 income of approximately $5,987.83[6] indicates Wife's total monthly income and standard of living has remained relatively constant since 2004.  While Wife nets approximately $988 dollars per month, she has a relatively low earning potential as a teacher and is now sixty-two years old.  The record indicates she has lived a frugal, modest lifestyle since the parties' divorce and has relatively small retirement and savings accounts to maintain her standard of living.  It would be inappropriate to restrict Wife to a lower standard of living now considering she sacrificed her education and career to raise children, allowing Husband to relocate the family and travel for work during their marriage.  Without alimony, Wife would be required to live substantially below the standard of living Husband enjoys and would be disadvantaged by her sacrifices.  *See Patel v. Patel*, 347 S.C. 281, 290–291, 555 S.E.2d 386, 391 (2001) (stating a spouse should not be required to live substantially below the husband's standard of living where the wife sacrificed her employment to further husband's career).  It would also be inequitable to require Wife to invade her personal assets to support herself while Husband may save and continue to draw a large salary from his employment.  *See Sweeney v. Sweeney*, 420 S.C. 69, 79–80, 800 S.E.2d 148, 153 (Ct. App. 2017) (finding a spouse is not required to invade her only assets to support herself to alleviate the husband's duty to pay alimony when the parties' current financial circumstances are vastly different and the husband continues to draw a substantial salary and dividends from his employment), *aff'g* 426 S.C. 229, 826 S.E.2d 299 (2019).

Finally, Husband does not dispute his ability to pay his alimony obligation.  At the time of the divorce, Husband reported he had a monthly income of $13,080 and monthly expenses of $4,683.50.  He also projected he had total assets of $252,325.  When he filed for termination or modification of alimony, he reported an annual base salary of $245,000, a monthly salary of $21,770.69, and monthly expenses of $19,500.42, which included $3,000 a month in entertainment and travel.  In his 2018 financial declaration, Husband reported total assets of $3,860,135.76.  Further, Husband admitted his current wife earns between $200,000 and $210,000 annually and shares Husband's reported monthly expenses, reducing his share of expenses to approximately $10,000 a month.  Husband also stated he included his

[5] This amount is the sum of Wife's 2004 monthly income ($2,120), alimony ($2,000), and child support ($1,500).
[6] This amount is the sum of Wife's 2018 monthly wages ($2,333.33), monthly overtime ($187.50), her monthly share of Husband's pension ($1,467), and alimony ($2,000).

current alimony obligation in his expenses, and after his monthly expenses, he had a surplus of $5,000 each month.

We find Wife has a need for $2,000 per month in alimony to enjoy life as she would have if she and Husband remained married because (1) Wife's income has remained relatively stable; (2) her expenses have not decreased outside those associated with raising two daughters; and, (3) her standard of living has remained relatively constant since 2004. *See Allen*, 347 S.C. at 184, 554 S.E.2d at 424 ("[A]limony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."). Therefore, even though the parties stipulated that Wife's income would be $281 for any future action, we find the increase in Wife's income over the amount in the stipulation and all other changes in the parties' circumstances are not so substantial or material as to warrant the termination or modification of alimony. *See Miles*, 355 S.C. at 519, 586 S.E.2d at 140 ("To justify modification or termination of an alimony award, the changes in circumstances must be substantial or material."). Accordingly, we affirm the family court on this issue.

## II.     Evidence Pertaining to Husband's Adultery and the Family's Relocation

Husband argues the family court erred in admitting testimony related to Husband's extramarital affair, the family's several relocations due to Husbands employment, and a letter Husband wrote to his paramour during the affair. We find the only evidentiary issue preserved for appellate review pertains to the letter.

Regarding Husband's extramarital affair and the family's several relocations, we find these issues unpreserved for appellate review. "An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [family court] to be preserved for appellate review." *Doe v. Roe*, 369 S.C. 351, 375–76, 631 S.E.2d 317, 330 (Ct. App. 2006). Husband failed to object to the questioning on these matters at trial and raised these issues for the first time in his appellant's brief. Therefore, Husband failed to safeguard these issues for appellate review, and we decline to address the merits.

As to the letter, we find the family court did not abuse its discretion in admitting the letter into evidence. *See Stoney*, 422 S.C. at 594 n. 2, 813 S.E.2d at 486 n.2 (stating evidentiary rulings are reviewed for an abuse of discretion). In the alimony modification context, statute and precedent clearly authorize the family court to consider the same factors initially considered to set alimony. *See* S.C. Code Ann. § 20-3-130(C) (2014); *Holmes v. Holmes*, 399 S.C. 499, 505, 732

S.E.2d 213, 216 (Ct. App. 2012) ("[T]he same considerations relevant to the initial setting of an alimony award may be applied in the modification context." (quoting *Miles*, 355 S.C. at 519, 586 S.E.2d at 140)).  Among the factors the family court *must* weigh in initially setting alimony is "marital misconduct or fault."  *See* § 20-3-130(C)(10) ("In making an award of alimony . . . , the court must consider and give weight in such proportion as it finds appropriate to *all of the following factors*: . . . marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce . . . ." (emphasis added)).

In accordance with the statute, the family court admitted the letter at the hearing and briefly mentioned Husband's marital misconduct in a factual recitation in the 2018 Order.  Nothing in the record indicates the family court failed to accord the letter proper weight in making its determination.  *See* § 20-3-130(C)(10) ("[T]he court must consider and give weight in such proportion as it finds appropriate to all of the following factors: . . . marital misconduct or fault . . . . ").  Accordingly, we find the family court did not abuse its discretion in admitting the letter.

### III.    Attorney's Fees

Husband asserts this court should reverse or modify Wife's attorney's fee award in the event it reverses or modifies the family court's order.  Because we affirm the findings of the family court, we also affirm the award of attorney's fees to Wife.

### CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED.**

**HUFF and GEATHERS, JJ., concur.**